**Alonzo P. LOPEZ, Plaintiff/Appellant,**

v.

**Louis W. SULLIVAN, Secretary of Health & Human Services of the United States, Defendant/Appellee.**

No. 88–2495.

United States Court of Appeals, Tenth Circuit.

Aug. 17, 1989.

---

James A. Burke, Santa Fe, N.M., for plaintiff/appellant.

William L. Lutz, U.S. Atty. and Ronald F. Ross, Asst. U.S. Atty., Albuquerque, N.M., and Gayla Fuller, Chief Counsel, Region VI, John M. Gough, Principal Regional Counsel, Social Security Disability Litigation Branch, and Joseph B. Liken, Asst. Regional Counsel, Office of the Gen. Counsel, U.S. Dept. of Health & Human Services, Dallas, Tex., for defendant/appellee.

Before MOORE, ANDERSON, and BRORBY, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Alonzo Lopez, recipient of disability benefits under Title II of the Social Security Act, appeals from a decision of the district court denying his motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) ("EAJA") and the Social Security Act, 42 U.S.C. § 406(b). We conclude that the district court made an incorrect legal ruling with respect to the effect on Lopez' situation of the Social Security Disability Benefits Reform Act of 1984, and we REMAND to the district court for a determination of whether, had his appeal been decided on the merits, Lopez would have been a "prevailing party" under the EAJA and would have received a "favorable judgment" under 42 U.S.C. § 406(b).[1]

## BACKGROUND

The dates of Lopez' administrative proceedings before the Social Security Administration ("SSA") are critical to an understanding of our disposition in this case. Lopez' most recent application for disability benefits was on February 28, 1984. The initial determination to disapprove that application was made on May 21, 1984. On May 23, Lopez filed for reconsideration. His reconsideration was reviewed unfavorably on June 6, 1984. He thereafter sought a hearing before an administrative law judge ("ALJ"), and on September 12, 1984 the ALJ issued a decision that Lopez was ineligible for benefits. On November 9, 1984 the Appeals Council formally declined to review the ALJ's decision, and therefore the decision of the ALJ remained binding. Lopez filed a civil action on November 13, 1984 seeking reversal of the Secretary's decision for lack of substantial evidence. A year later, on November 25, 1985, Lopez filed a motion to remand the case for reevaluation of his claim under section 5 of the Social Security Disability Benefits Reform Act of 1984, Pub.L. 98–460, 98 Stat. 1794 ("Reform Act") (codified in scattered sections of 42 U.S.C.). The Secretary did not oppose the motion, and the court granted it. Upon reevaluation under the new criteria, Lopez was found eligible for disability benefits dating back to January 6, 1982, the date of onset of his disabling mental impairment.

After succeeding at the reevaluation stage, Lopez filed his request for attorney's fees, which was denied. He argues on appeal that the original SSA decision lacked substantial evidence and that, on remand, he was a prevailing party under the pre-Reform Act standards. He also asserts that the remand entitled him to prevailing party status because the Secretary would not have reevaluated his case had he not had an appeal pending. Finally, he argues that he should receive attorney's fees for court representation under 406(b) because the Secretary did not oppose them.

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.

App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

The SSA, in turn, argues that, at the time of remand, the pre-Reform Act standards had been superseded and the possible outcome under those standards is irrelevant. It also argues that Lopez' remand was required under section 5(c)(1) of the Reform Act, and that, therefore, he was ineligible for prevailing party status. Finally, it asserts that its decision to take no position on the 406(b) fee award is irrelevant, as the district court properly exercised its discretion in ruling that the lawsuit had little or nothing to do with Lopez' ultimate success in obtaining benefits.

## LEGAL ANALYSIS

■ The district court ruled that section 5(c)(1) of the Reform Act applied to Lopez' situation. It, therefore, held that Lopez' success in obtaining benefits was due to a legally required remand for an SSA reevaluation rather than to success on the merits of his original appeal. After reviewing de novo the court's interpretation of section 5(c)(1), as is our prerogative, we determine that application of the statutory provision to Lopez was error.[2] We, therefore, need not consider whether a mandatory remand would have precluded prevailing party status for Lopez.

Section 5(c)(1) provides in pertinent part: "Any *initial determination* that an individual is not under a disability by reason of a mental impairment and any *determination* that an individual is not under a disability by reason of a mental impairment *in a reconsideration of or hearing on an initial disability determination,* made or held ... after the date of the enactment of this Act [Oct. 9, 1984] and prior to the date on which revised criteria

are established by regulation [August 28, 1985] ... shall be redetermined by the Secretary as soon as feasible after the date on which such criteria are so established, applying such revised criteria (emphasis added)."[3]

The district court erred in concluding that the Appeals Council's denial of review on November 9, 1984 is included in the three types of determinations referred to in the above quotation. The determinations specified include the initial determination and a determination upon reconsideration or at a hearing on the initial determination. In fact, all three types of determinations were made, in this case, prior to October 9, 1984 —the date of passage of the Reform Act. The initial determination was made on May 21, 1984, the reconsideration determination on June 6, 1984, and the hearing decision on September 12, 1984. Under the express terms of the above provision, the Secretary is not obligated to reevaluate initial determinations and reconsiderations or hearing determinations made prior to October 9th. *See Mazzola v. Sec'y of Health & Human Servs.,* 795 F.2d 222, 224 (1st Cir.1986); *Cook v. Heckler,* 783 F.2d 1168, 1172 n. 11, (4th Cir.1986); *Conley v. Bowen,* 781 F.2d 143, 147 (8th Cir.1986).[4]

The district court confused the review process of the Appeals Council, which is not mentioned in the quoted provision, with the determinations that are specified in the provision. Yet the statutory omission of the Appeals Council review is not illogical when one considers that the Council's role is, as its title indicates, an appellate one. The Council may dismiss, deny, or accept a request for review. 20 C.F.R. § 404.967.

2. The Secretary's reference to the EAJA abuse of discretion standard in *Pierce v. Underwood,* 487 U.S. ——, 108 S.Ct. 2541, 2347–49, 101 L.Ed.2d 490 (1988), is not directly on point. The abuse of discretion standard invoked therein applied to a review of the court's determination as to whether the government's position had been substantially justified under the EAJA.

3. The text of section 5 of the Reform Act can be found after 42 U.S.C. § 421 under the heading "Moratorium on Mental Impairment Reviews."

4. A Sixth Circuit case holding that section 5(c)(1) requires the Secretary "to reexamine any

case receiving a final administrative determination after October 9, 1984" and concluding that the decision of the Appeals Council is the final administrative decision seems to us to be clearly wrong. *See Daley v. Sec'y of Health and Human Servs.,* 819 F.2d 619, 620 (6th Cir.1987). Section 5(c)(1) does not refer to a *final* administrative decision finding a claimant *not* disabled, but even if it did, the decision of the ALJ is final if the Appeals Council declines to review it, as was the case in *Daley* and is the case here. *See* 20 C.F.R. § 404.981.

If it accepts a request, it does not apply new standards adopted after the decision but instead reviews the decision on the basis of the evidence and the law as of the date of the decision. *See* 20 C.F.R. §§ 404.967–404.981. In the case at hand, the Appeals Council found no factual or legal basis for reviewing the ALJ decision and denied the request. R. Vol. II at 5–6. Therefore, the ALJ decision stood as the final decision of the SSA.

Further support for our interpretation of the above quotation is provided by the remainder of statutory section 5(c)(1), which reads in pertinent part:

"[A]ny initial determination that an individual is not under a disability by reason of a mental impairment made ... in a reconsideration of, hearing on, *review by the Appeals Council of,* or judicial review of *a decision rendered in any continuing eligibility review* to which subsection (b)(1) applies shall be redetermined by the Secretary as soon as feasible after the date on which such criteria are so established, applying such revised criteria (emphasis added)."

This portion of the section 5(c)(1) reveals that Congress knew how to include Appeals Council reviews in its mandate for reevaluation when it chose. It chose to do so only in the context of continuing eligibility reviews, i.e., where an individual had previously been determined to be disabled, but it did not so choose in the context of a previous determination of no disability. Section 5(c)(1) of the Reform Act thus applies to two different groups: (1) those who had applied for disability benefits but who had not received SSA determinations before October 9, 1984, and (2) those *previously found disabled* whose initial eligibility reviews had not been completed before October 9th or whose appeals were filed or pending on or after June 7, 1983. *See also* Reform Act, § 5(b)(1). In other words, while those who previously had been declared disabled were not to lose their eligibility if they met the new standards, those

previously found *not disabled* were not to gain the opportunity to be reevaluated automatically under the new standards. Their recourse lay with review by the Appeals Council and courts under the old standards or with a reapplication for benefits under the new standards.[5]

■ Given the district court's misreading of the statute to require a remand for reevaluation of Lopez' eligibility, the court's conclusion that Lopez was not entitled to attorney's fees is flawed. Since the reason for the SSA acquiescence to Lopez' remand motion is unclear, however, and since the court did not rule on the merits, we are unable to make a determination of whether Lopez' lawsuit was the reason for his success in obtaining benefits upon remand. If the SSA acquiesced in the remand as a way to settle or avoid losing the suit, then one might conclude that the lawsuit was a catalyst for or causally linked to Lopez' ultimate success and he was, therefore, a prevailing party. *See Hendricks v. Bowen,* 847 F.2d 1255, 1258 (7th Cir.1988); *Truax v. Bowen,* 842 F.2d 995, 997 (8th Cir.1988); *Supre v. Ricketts,* 792 F.2d 958, 962 (10th Cir.1986); *Martin v. Heckler,* 773 F.2d 1145, 1149 (11th Cir.1985) (en banc); *Cruz v. Bowen,* 668 F.Supp. 669, 673 (D.Ut. 1987). If, on the other hand, the SSA acquiesced either (1) because it knew that Lopez had missed the reapplication deadline and was generously offering an alternative, or (2) because of a mistaken belief that the Reform Act compelled the reevaluation, then it was acting gratuitously, and the lawsuit did not meet the test for Lopez' establishment of prevailing party status. *See Nadeau v. Helgemoe,* 581 F.2d 275, 281 (1st Cir.1978) ("If it has been judicially determined that defendants' conduct, however beneficial it may be to plaintiffs' interests, is not required by law, then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense."). *See also Supre v. Ricketts,* 792 F.2d at 962; *J. & J. Anderson, Inc. v. Town of Erie,* 767 F.2d 1469, 1475 (10th Cir.1985); *Operating Eng'rs. Loc. Union*

---

**5.** Applicants rejected between March 1, 1981 and October 9, 1984 whose reapplications were successful could receive disability benefits for

"the period considered in the most recent prior determination." Reform Act, § 5(c)(3). They had to file, however, by October 9, 1985.

*No. 3 of the Int'l Union v. Bohn,* 737 F.2d 860, 863 (10th Cir.1984);[6] *Cruz v. Bowen,* 668 F.Supp. 669, 671–72 (D.Ut.1987). That is, even assuming the suit catalyzed the SSA to reevaluate the case, it nonetheless did not have the effect of inducing the SSA to comply with section 5(c)(1) of the Reform Act because the SSA was not, in fact, in noncompliance. Although ironically, on appeal, the SSA necessarily supported the court's view that the Reform Act compelled a reevaluation of the ALJ's decision against Lopez, the record before the district court is silent as to the reason for the SSA's choice not to oppose Lopez' motion. We conclude that on the basis of the record before us, we have no way of determining who was the prevailing party.

An alternative ground is available for determining whether Lopez is entitled to attorney's fees under the EAJA and section 406(b) of the Social Security Act. That is to determine whether substantial evidence was lacking to support the original ALJ decision that Lopez was not disabled. This issue is not properly before us on appeal, however, because the district court never made a ruling on the merits of this argument and we are not privy to the full briefs submitted below. We find ourselves in the awkward position of remanding to the district court the question of whether Lopez would have prevailed on the merits of his original appeal. We do so with full knowl-

edge that the original appeal has been dismissed and has been mooted in most respects by the award of disability benefits dating back to January 1982. Nonetheless, we conclude that the question of attorney's fees cannot be resolved without consideration of the factual evidence and pre-Reform Act law on which the original denial of disability was predicated. Although it appears from the record that substantial evidence may have been lacking to support the ALJ's original determination, we deem it proper to ask the district court to make this initially fact-laden determination rather than undertake it ourselves.[7]

In summary, it is premature to determine whether or not Lopez should receive attorney's fees, under EAJA, the Social Security Act, or both. We remand for a determination of whether Lopez would have received a favorable judgment and prevailed on his original appeal and, if so, whether the SSA position lacked substantial justification or whether there were any special circumstances which would make an award unjust. *See* 28 U.S.C. § 2412(d)(1)(A). *See generally* the discussion of what constitutes substantial justification in *Pierce v. Underwood,* 487 U.S. ——, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). If the court determines that attorney's fees are available, it should then determine for which stages of representation the attorney should be reimbursed and at what rate.[8] Of course, there

---

**6.** Although *Nadeau* and the three cited 10th Circuit cases interpreted the meaning of prevailing party under civil rights statutes, the *Nadeau* test adopted by the 10th Circuit is applied under other fee-shifting statutes such as the EAJA. *See, e.g., Cruz v. Bowen,* 668 F.Supp. at 671. *Cf. McGill v. Sec'y of Health & Human Servs.,* 712 F.2d 28, 30–31 (2d Cir.1983), *cert. denied,* 465 U.S. 1068, 104 S.Ct. 1420, 79 L.Ed.2d 745 (1984).

**7.** Lopez argues on appeal that the readjudication of his disability application was based on nothing more than pre-Reform Act standards correctly applied and, in particular, on the use of a vocational expert, who should have been used in the first place. Appellant's Brief at 12. Since new standards were in place, and there is no evidence that they were not used, the testimony of a vocational expert on remand would not necessarily mean that such an expert, if used at the original hearing, would have ruled out a significant number of jobs for plaintiff on the basis of the pre-Reform Act law. We accept

the position of the SSA that "[t]he change in the law governing the evaluation of mental impairments doubtless affected the nature of the ALJ's hypothetical questioning of the vocational expert, as well as his analysis of the existence of a significant nonexertional impairment." Appellee's Brief at 5.

Lopez' assertion, in his reply brief at 2, that a vocational expert was not used upon remand is mystifying. Lopez' brief at 4–5 and 12 acknowledges that a vocational expert testified at the second hearing, and the second ALJ's decision includes an assessment of the vocational expert's testimony. We caution the attorney to read his briefs more carefully in the future for such contradictions and for mechanical errors as well, including misquotations.

**8.** Should Lopez be eligible for an EAJA award, we offer no opinion as to whether attorney's fees under EAJA should be available for his representation on remand before the SSA. *Cf. Sullivan v. Hudson,* —— U.S. ——, 109 S.Ct. 2248,

is to be no double recovery by the attorney of his attorney's fees, and, in effect, any amount due him under the Social Security Act would be reduced by the amount coming from any EAJA award. *See Weakley v. Bowen,* 803 F.2d 575, 580 (10th Cir.1986).

REMANDED for further action in accordance with the instructions herein.

104 L.Ed.2d 941 (1989) (federal court may award attorney's fees under EAJA for represen-tation provided during SSA administrative proceedings held pursuant to remand).