**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 21 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CENTER FOR BIOLOGICAL
DIVERSITY, a non-profit corporation,

Plaintiff-Appellant,

and

SIERRA CLUB,

Plaintiff,

v.

GALE A. NORTON,* Secretary of the
Department of the Interior,

Defendant-Appellee.

No. 00-2162

---

Appeal from the United States District Court
for the New Mexico
(D.C. No. CIV-98-322-LH/JHG)

---

Matt Kenna, Kenna & Hickcox, P.C., Durango, Colorado, for Plaintiff-Appellant.

Ronald M. Spritzer, United States Department of Justice, Washington, D.C., (Lois
J. Schiffer, Assistant Attorney General, District of New Mexico, Albuquerque,

---

*Pursuant to Fed. R. App. P. 43(c)(2), Gale A. Norton is substituted for
Bruce Babbitt, Secretary of the Interior, as a defendant in this action.

New Mexico; John J. Kelly, United States Attorney, District of New Mexico, Albuquerque, New Mexico; John W. Zavitz, Assistant United States Attorney, District of New Mexico, Albuquerque, New Mexico; Ellen Durkee, Jane P. Davenport, Sean H. Donahue, Attorneys, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C., on the brief), for Defendant-Appellee.

---

Before **KELLY**, **McKAY**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I.    INTRODUCTION

Appellant, Center for Biological Diversity (the "Center"), filed a lawsuit seeking injunctive relief to require the Secretary of the Interior (the "Secretary") to take final agency action on listing the Arkansas River shiner (the "shiner") as an endangered or threatened species.  The suit became moot when the Secretary took final action on the shiner.  The Center then filed a motion seeking litigation costs, including attorney's fees, pursuant to 16 U.S.C. § 1540(g)(4).  The district court denied the Center's motion, holding that the Center had failed to demonstrate that its lawsuit was a catalyst in causing the Secretary to take final action on the shiner.  The Center appeals.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm**.

## II.    BACKGROUND

On August 3, 1994, the Secretary published a proposed regulation to list the Arkansas River basin population of the shiner as an endangered species. *See* Proposed Rule to List the Arkansas River Basin Population of the Arkansas River Shiner as Endangered, 59 Fed. Reg. 39,532, 39,532 (proposed Aug. 3, 1994). The shiner is a "small fish found in the Canadian (South Canadian) River in New Mexico, Oklahoma, and Texas; and the Cimarron River in Kansas and Oklahoma." *Id*. Pursuant to § 4(b)(6)(A) of the Endangered Species Act (the "ESA"), the publication of the proposed rule triggered a one-year period by the end of which the Secretary was required to either: (1) publish a final rule listing the shiner as endangered or threatened, (2) publish a notice that the one-year period be extended, or (3) publish a notice that the proposed regulation be withdrawn. *See* 16 U.S.C. § 1533(b)(6)(A)(i).

In the August 3, 1994 proposed rule, the Secretary made a finding that critical habitat for the shiner was not determinable. *See* Proposed Rule to List the Arkansas River Basin Population of the Arkansas River Shiner as Endangered, 59 Fed. Reg. at 39,532. This finding triggered a maximum two-year period within which the Secretary was required to issue a final critical habitat designation for the shiner. *See* 16 U.S.C. § 1533(a)(3)(A), (b)(6)(C). The Center contends that final agency action on listing the shiner should have been completed by August 3,

1995, and action on designating critical habitat for the shiner should have been completed no later than August 3, 1996.

Beginning April 10, 1995, a one-year, congressionally-imposed moratorium prohibited the Secretary from making final determinations that a species was threatened or endangered. *See* Emergency Supplemental Appropriations & Rescissions for the Dep't of Defense to Pres. & Enhance Military Readiness Act of 1995, Pub. L. No. 104-6, 109 Stat. 73, 86. When the moratorium was lifted on April 26, 1997, the Secretary was faced with a backlog of more than 240 proposed listings for which final determinations had not been made. *See* Restarting the Listing Program & Final Listing Priority Guidance, 61 Fed. Reg. 24,722, 24,722-23 (May 16, 1996). Faced both with this backlog and reduced funding for its listing activities, the Secretary implemented the Final Listing Priority Guidance, a hierarchical system that prioritized listing activities. *See Forest Guardians v. Babbitt*, 174 F.3d 1178, 1183-84 (10th Cir. 1999) (providing details on levels of funding for the listing program and the impact of the Listing Priority Guidance on the Secretary's listing activities).

As of May 13, 1997, the Secretary had not taken final action on listing the shiner or designating critical habitat. On that date, the Center submitted to the Secretary a sixty-day notice of intent to sue pursuant to 16 U.S.C.

§ 1540(g)(2)(C).[1] Ten months later, having received no response from the Secretary to the sixty-day notice, the Center filed an action against the Secretary under the citizen-suit provision of the ESA. *See* 16 U.S.C. § 1540(g) (allowing citizen suits for injunctive relief). The Center sought, *inter alia*, injunctive relief requiring the Secretary to take final action on the proposed rule to list the shiner as endangered and to take final action on designating critical habitat for the shiner.

On May 6, 1998, the Center filed a motion for summary judgment. The Secretary filed a response to the motion for summary judgment together with a motion requesting a stay. In support of the motion for stay, the Secretary filed a declaration executed by Jamie Rappaport Clark, the Director of the United States Fish and Wildlife Service (the "Service"). Clark recounted the activities relating to the listing of the shiner in which the Service had engaged since the congressionally-imposed moratorium had been lifted. These activities included the opening of a third public comment period from December 5, 1997 to January 5, 1998. *See* Reopening of Public Comment Period on the Proposed Rule to List the Arkansas River Basin Population of the Arkansas River Shiner as Endangered, 62 Fed. Reg. 64,337, 64,337 (Dec. 5, 1997). In the declaration, Clark estimated

---

[1]The shiner was one of ninety-five species listed in the sixty-day notice.

that the final listing determination for the shiner would be completed by November 15, 1998.

On November 23, 1998, the Secretary issued a final rule listing the shiner as a threatened species. *See* Final Rule to List the Arkansas River Basin Population of the Arkansas River Shiner (Notropis girardi) as Threatened, 63 Fed. Reg. 64,772, 64,772 (Nov. 23, 1998). The Secretary also determined that designation of critical habitat for the shiner was not prudent. *See id*. at 64,796-97. The Secretary's final action on the shiner provided all the relief sought by the Center in its lawsuit and, therefore, rendered the case moot. Accordingly, on December 7, 1998, the parties entered into a Joint Stipulation of Dismissal.

On March 1, 1999, the Center filed a motion for litigation costs, including attorney's fees, pursuant to 16 U.S.C. § 1540(g)(4). The Secretary opposed the motion and supported its opposition with a declaration executed by Clark on April 2, 1999. The district court denied the motion and the Center's appeal is the matter before this court.

## III. DISCUSSION

This court reviews a district court's refusal to grant attorney's fees for abuse of discretion. *See Nat'l Ass'n of Prof'l Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*, 223 F.3d 1143, 1146 (10th Cir. 2000). Legal conclusions underlying the district court's decision are reviewed *de novo* while factual

findings are reviewed for clear error. *See Vibra-Tech Eng'rs, Inc. v. United States*, 787 F.2d 1416, 1418-19 (10th Cir. 1986). Thus, an abuse of discretion is established if the district court's adjudication of the attorney-fee issue is based upon an error of law or a clearly erroneous finding of fact. *See Kiowa Indian Tribe v. Hoover*, 150 F.3d 1163, 1165 (10th Cir. 1998).

A court may award litigation costs, including attorney's fees, in citizen suits brought pursuant to the ESA "whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4). The Supreme Court, interpreting identical language in the Clean Air Act, has held that "absent some degree of success on the merits by the claimant, it is not 'appropriate' for a federal court to award attorney's fees . . . ." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983). When there has been no adjudication on the merits, this court has held that a claimant seeking attorney's fees under 30 U.S.C. § 1270(d), a statute that also allows fees to be awarded when "appropriate," must demonstrate that it was the catalyst behind the change in the defendant's conduct. *See Powder River Basin Res. Council v. Babbitt*, 54 F.3d 1477, 1486 (10th Cir. 1995). Although this court has never held that the catalyst test applies to fee requests pursuant to 16 U.S.C. §

1540(g)(4), both parties advocate its application and we thus assume, without deciding, its applicability.[2]

To prevail under the catalyst test, the claimant must show: "(1) that [the] lawsuit is causally linked to securing the relief obtained and (2) that the defendant's conduct in response to the lawsuit was required by law." *Powder River Basin Res. Council*, 54 F.3d at 1486 (quotation omitted). The Secretary concedes that she was required to take final action on the proposed listing of the shiner and, accordingly, does not dispute that the Center has successfully met the second part of the catalyst test. Thus, the only issue before this court is whether

---

[2]The Supreme Court recently held that the catalyst theory cannot be invoked to support an award of attorney's fees under either the Fair Housing Amendments Act of 1988 ("FHAA") or the Americans with Disabilities Act of 1990 ("ADA"). *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 121 S. Ct. 1835, 1843 (2001). The attorney fee provisions in both the FHAA and the ADA authorize the court to award fees to the "prevailing party." *See* 42 U.S.C. § 3613(c)(2) (FHAA); 42 U.S.C. §12205 (ADA). The Court held that the term "prevailing party" is a legal term of art and does not "include[] a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon*, 121 S. Ct. at 1838. The statute at issue in this case, however, contains no express requirement that the party seeking attorney's fees be the "prevailing party" but, instead, provides, "The court, in issuing any final order in any suit brought pursuant to paragraph (1) of this subsection, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4). Thus, the basis of the Court's conclusion in *Buckhannon* is not applicable in this case. Because neither party raises the issue, we decline to address the continued applicability of the catalyst test to fee requests brought pursuant to statutes that do not contain a "prevailing party" requirement.

the Center's lawsuit was causally linked to the relief obtained.[3]  This is a factual

determination reviewed under the clearly erroneous standard.  *See Collins v.*

*Romer*, 962 F.2d 1508, 1511 (10th Cir. 1992); *see also Manning v. United States*,

146 F.3d 808, 812 (10th Cir. 1998) ("A finding of fact is clearly erroneous if it is

without factual support in the record or if the appellate court, after reviewing all

the evidence, is left with a definite and firm conviction that a mistake has been

made." (quotations omitted)).

The Center can establish a causal link between its lawsuit and the

Secretary's action without establishing that the suit was the only reason the

Secretary took final action on the shiner.  *See Foremaster v. City of St. George*,

882 F.2d 1485, 1488 (10th Cir. 1989).  The Center, however, must demonstrate

that its suit was a "substantial factor or a significant catalyst" prompting the

Secretary's action.  *Id.*  (quotation omitted).  The Center vigorously argues that

the chronology of events leading to final agency action on the shiner, standing

alone, raises a presumption that its lawsuit was the catalyst for the Secretary's

final action.  *See Luethje v. Peavine Sch. Dist.*, 872 F.2d 352, 354 (10th Cir.

1989) (holding chronology may be used to establish the necessary causal link).

The Center then asserts that the Secretary has failed to rebut that presumption

---

[3]On appeal, the Secretary has abandoned the argument made before the
district court that the Center must also demonstrate that its suit substantially
contributed to the goals of the ESA.

with credible evidence.[4]  Additionally, the Center argues that the district court erroneously required it to produce "smoking gun" evidence "above and beyond the chronology of events."

In an effort to meet its burden of demonstrating a causal link, the Center relied exclusively on the chronology of events leading up to final agency action on the shiner.  The Center pointed to the uncontroverted fact that the Secretary had failed to take final action on the shiner as of May 13, 1997, nearly three years after the proposed rule to list the shiner as endangered was first published in the Federal Register.  Although the Center submitted a sixty-day notice of intent to sue, the Secretary failed to respond to that notice or in any way indicate to the Center that work on listing the shiner was proceeding.  The Center filed its complaint and its motion for summary judgment and only then did the Secretary identify a tentative date by which final agency action on the shiner would be completed.  Based solely on the foregoing sequence of events, the Center asserts that the designation of the tentative date "clearly came as a result of this lawsuit." The Secretary, however, supplemented the Center's chronology with evidence that work on listing the shiner began well before the Center filed its lawsuit and that

---

[4]It is the Center that bears the burden of demonstrating a causal link between its lawsuit and the Secretary's action. *See Powder River Basin Res. Council v. Babbitt*, 54 F.3d 1477, 1486 (10th Cir. 1995).  Whether it is assisted in doing so by the asserted presumption is a matter this court need not decide.

the listing timetable was not altered or accelerated in response to the Center's lawsuit. This evidence consisted of Clark's April 2, 1999 declaration and the attachments thereto.

The Center argues, without any citation to authority, that the district court erred in relying on Clark's declaration because the declaration was "prepared specifically to avoid paying the Center its litigation costs." It also argues that to the extent Clark's statements of opinion rebut the chronology of events, they are not reliable and should not have been considered by the district court. In addition to Clark's statements of opinion, however, the declaration contains uncontroverted facts supplementing the chronology offered by the Center. It is unnecessary to address the Center's arguments because even if Clark's statements of opinion are not considered, the complete chronology belies the Center's assertion that it's lawsuit was a significant catalyst for agency action on the shiner.

The Secretary's assertion that action was being taken on the shiner well before the Center filed its lawsuit is corroborated by the public notice referred to in Clark's declaration and published in the Federal Register on December 5, 1997. This notice reopened the public comment period on the shiner and allowed additional comments to be submitted until January 5, 1998. *See* Reopening of Public Comment Period on the Proposed Rule to List the Arkansas River Basin

Population of the Arkansas River Shiner as Endangered, 62 Fed. Reg. at 64,337.
In addition, a memorandum dated February 2, 1998 and attached to Clark's declaration suggests that the timetable on listing the shiner was not accelerated in response to the Center's lawsuit. That memorandum, prepared before the Center filed its lawsuit, contains a statement by a field supervisor for the Service that a draft of a final rule on the shiner would be transmitted to the Service's Regional Office by May 29, 1998. The draft of the proposed rule was not actually submitted to the Regional Office until July 29, 1998. Thus, notwithstanding the filing of the Center's complaint, the draft of the proposed final rule on the shiner was actually submitted to the Regional Office well beyond the pre-litigation timetable. This delay in submitting a draft of the proposed final rule undermines the Center's assertion that its lawsuit accelerated agency action on the shiner. Accordingly, viewing the uncontroverted evidence as a whole, this court cannot say that the district court committed clear error when it concluded that final agency action on the shiner was not was not casually linked to the Center's lawsuit.

The Center's argument that the district court committed legal error because the court required it to produce a "smoking gun" in addition to a supporting chronology lacks merit. The evidence before the district court sufficiently supported the court's conclusion that the Center failed to produce even a

supporting chronology. Implicit in the court's ruling is its conclusion that the Center failed to produce either direct or indirect evidence which persuaded the court that the lawsuit was the catalyst for the Secretary's action. The Center's arguments notwithstanding, the district court did not erroneously require the Center to produce both direct and circumstantial evidence; it merely required persuasive evidence of either sort.

The Center has failed to demonstrate that the district court committed either legal error or made a clearly erroneous factual finding. Accordingly, we conclude that the district court did not abuse its discretion when it concluded that the Center's lawsuit was not a catalyst for final agency action on the shiner.

The remainder of the Center's arguments go to the issue of whether it would have been proper to award litigation costs if the district court had concluded that the Center's suit was a catalyst for the Secretary's action on the shiner. Because we conclude that the district court did not abuse its discretion when it determined that the Center's suit was not a catalyst, it is unnecessary for this court to address these arguments.

## IV. CONCLUSION

The district court's finding that the Center's lawsuit was not causally linked to final agency action on the shiner is not clearly erroneous. Additionally, the Center has failed to demonstrate that the court's legal analysis was erroneous.

Accordingly, this court concludes that the district court did not abuse its discretion when it denied the Center's request for litigation costs. The district court's order denying the Center's motion for litigation costs is **affirmed**.