**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 2 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENH CIRCUIT

AMIGOS BRAVOS, a nonprofit
corporation, and NEW MEXICO
CITIZENS FOR CLEAN AIR AND
WATER, a nonprofit corporation,

　　　　Plaintiffs-Appellants,

　　v.　　　　　　　　　　　　　　　No. 02-2030

ENVIRONMENTAL PROTECTION
AGENCY, United States; CAROL
BROWNER, Administrator of the
Environmental Protection Agency; and
GREG COOK, EPA Regional
Administrator for Region VI,

　　　　Defendants-Appellees.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. CIV-99-327 DJS/RLP)**

---

Matthew K. Bishop, Taos, New Mexico, for Plaintiffs-Appellants.

Kathryn E. Kovacs, U.S. Department of Justice, Environment & Natural
Resources Division, Appellate Section, Washington, D.C. (Thomas L. Sansonetti,
Assistant Attorney General; David C. Shilton and Mary F. Edgar, U.S.
Department of Justice, Environment & Natural Resources Division, Appellate
Section, Washington, D.C., Richard T. Witt, U.S. Environmental Protection
Agency, Office of General Counsel, Washington, D.C., and Renea Ryland, U.S.
Environmental Protection Agency, Office of Regional Counsel, Dallas, Texas, of
counsel, with her on the brief), for Defendants-Appellees.

Before **BRISCOE** , **BALDOCK** , and **HARTZ** , Circuit Judges.

**HARTZ** , Circuit Judge.

This appeal concerns the availability of an award for litigation costs (including attorney fees) under § 505(d) of the Clean Water Act (CWA), 33 U.S.C. § 1365(d), when a lawsuit has been mooted by government conduct in apparent response to the lawsuit.

Plaintiffs Amigos Bravos and New Mexico Citizens for Clean Air and Water brought suit to compel the Environmental Protection Agency (EPA) to take action against pollution by Molycorp, Inc. The suit was dismissed as moot when the EPA issued Molycorp a permit with respect to the pollution at issue. Contending that their lawsuit was what caused the EPA to act, Plaintiffs moved to recover their costs under the "catalyst theory." The catalyst theory permits a plaintiff to recover costs even when the defendant's acts render the suit moot if the plaintiff can "show:  (1) that [the] lawsuit is causally linked to securing the relief obtained and (2) that the defendant's conduct in response to the lawsuit was required by law." *Ctr. for Biological Diversity v. Norton*, 262 F.3d 1077, 1081 (10th Cir. 2001) (internal quotation marks omitted). The magistrate judge, presiding with the consent of the parties under 28 U.S.C. § 636(c)(1), denied

Plaintiffs' request for costs because they had failed to establish that the EPA's actions were "required by law."

Exercising jurisdiction under 28 U.S.C. §§ 636(c)(3) and 1291, we affirm. We hold that even if the catalyst theory applies to requests for costs under § 505(d), Plaintiffs are not entitled to recover their costs because EPA's action—issuing the permit to Molycorp—was not a legally required response to Plaintiffs' lawsuit.

## I.    Background

This case arose out of the EPA's initial refusal to recognize pollution of the Red River arising from waste rock piles at Molycorp's molybdenum mine as a point source discharge subject to regulation under the CWA. The CWA provides that "the discharge of any pollutant by any person" is generally unlawful. 33 U.S.C. § 1311(a). "'[D]ischarge of a pollutant'" includes "any addition of any pollutant to navigable waters from any point source." *Id.* § 1362(12)(A). A "point source" is "any discernible, confined and discrete conveyance . . . from which pollutants are or may be discharged." § 1362(14). A point source discharge otherwise prohibited by the CWA is lawful if authorized by a National Pollutant Discharge Elimination System (NPDES) permit issued by the EPA. *See* §§ 1311(a), 1342.

In 1977 Molycorp obtained an NPDES permit for its mine operations. When it applied for renewal in 1992, some members of the public complained that the mine's waste rock piles were contaminating ground water that was then seeping into the Red River. They contended that the discharges from the piles should be considered point sources subject to regulation under the CWA. The EPA disagreed and issued Molycorp an NPDES permit that did not address the discharge of pollutants from the waste rock piles.

Three years later Plaintiffs sued Molycorp under 33 U.S.C. § 1365(a)(1), alleging that Molycorp was in violation of the CWA because discharges from the waste rock piles were point source discharges for which no NPDES permit had been obtained. The district court characterized the suit as a challenge to the Administrator's decision to reissue Molycorp's permit without regulating these discharges, a decision that could be challenged only by appealing the issuance of the permit to the court of appeals. *See id*. § 1369(b)(1)(F). Accordingly, it dismissed the action. We affirmed. *Amigos Bravos v. Molycorp, Inc.*, 166 F.3d 1220 (10th Cir. 1998) (unpublished).

In the meantime, the EPA Region 6 NPDES Permits Branch had requested "assistance in determining if mining activities at the . . . Molycorp . . . Mine . . . are a source of contamination to the Red River." Aplt. App. at 36. The request was "[s]pecifically . . . to determine if the[] mining activities [we]re resulting in

-4-

the discharge of . . . [pollutants] via seeps along the Red River . . . ." *Id.*  In response, the Region 6 Ground Water Center of Excellence conducted a study of the Molycorp site.  EPA geologist David Abshire summarized the study's results in a February 1998 document entitled "Report on Hydrological Connection Associated With Molycorp Mining Activity, Questa, New Mexico."  For purposes of this appeal, we will assume that Plaintiffs have accurately characterized the report as concluding that pollution from the waste rock piles was "traveling to seeps along the Red River via a ground water hydrological connection."  Aplt. Br. at 5.

Approximately a year after the report was issued, Plaintiffs brought this action against Defendants under the CWA's citizen-suit provision, 33 U.S.C. § 1365(a)(2).  That provision states that "any citizen may commence a civil action on his own behalf . . . against the Administrator where there is alleged a failure of the Administrator to perform any act or duty . . . which is not discretionary with the Administrator."  *Id.*

Plaintiffs' complaint contained two counts.  Count I alleged that the EPA was aware that Molycorp was illegally discharging pollutants and therefore had a nondiscretionary duty under § 309(a)(3) of the CWA, 33 U.S.C. § 1319(a)(3), to take one of two enforcement actions:  either issue a compliance order or file a civil action against Molycorp.  Plaintiffs asked the court to declare that the EPA

had failed to fulfill this duty under § 309(a)(3), and to order the EPA to take one of the two enumerated enforcement actions against Molycorp.  Count II alleged that under §§ 301 and 402 of the CWA, the EPA had a nondiscretionary duty to either prohibit Molycorp's illegal discharges or issue a permit for them.  Plaintiffs asked the court to declare that the EPA had violated this duty and to order the EPA to issue a permit or prohibit Molycorp's discharges.  The district court dismissed the case, ruling that in light of Plaintiffs' earlier action against Molycorp itself, Plaintiffs' action against the EPA and its administrators was barred by the doctrine of collateral estoppel.

We reversed and remanded because the elements of collateral estoppel had not been established. *See Amigos Bravos v. E.P.A.*, 236 F.3d 621 (10th Cir. 2001). While rehearing before this court was pending, the EPA issued Molycorp a permit for the discharges referred to in Plaintiffs' complaint, on condition that within two years Molycorp would install a specified "seepage interception and management system" for the purpose of preventing all but trace amounts of pollutants from being discharged into the Red River from the waste rock piles.  Permit at Pt. I, 17 and Pt. II, 1.  The permit also provided that Molycorp would be subject to monitoring and reporting requirements.  All parties agreed that issuance of the permit mooted Plaintiffs' case.  We therefore vacated the order of reversal, withdrew our opinion, and remanded to the district court with instructions to

vacate its earlier judgment, opinion, and order. *See Amigos Bravos v. E.P.A.*, 6 Fed. Appx. 719 (10th Cir. 2001).

In the remand order, however, we said that the district court had not been divested of jurisdiction to decide whether Plaintiffs were entitled to recover litigation costs under § 505(d) of the CWA, 33 U.S.C. § 1365(d). That section allows the court to "award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate." 33 U.S.C. § 1365(d). On remand Plaintiffs contended that they were entitled to an award of litigation costs under the catalyst theory because Defendants had acted in response to their lawsuit. But the magistrate judge denied Plaintiffs' motion for costs because "Defendants' action was not required by law." *Amigos Bravos v. E.P.A.*, No. 99-CV-00327, slip op. at 8 (D.N.M. Jan.16, 2002).

On appeal Plaintiffs challenge the magistrate judge's decision on two grounds. First, they argue that Defendants' actions were mandated by law, and not discretionary. Second, they contend that the judge incorrectly applied the catalyst test because to meet the "required by law" element, a plaintiff need not demonstrate that the defendant had a nondiscretionary duty. In Plaintiffs' view, the "element is satisfied if defendants' action is more than a 'wholly gratuitous response to an action that in itself was frivolous or groundless.'" Aplt. Br. at 26

(quoting *J & J Anderson, Inc. v. Town of Erie*, 767 F.2d 1469, 1475 (10th Cir. 1985)).

Defendants respond that the district court correctly denied Plaintiffs' request for costs because Plaintiffs failed to establish either the causation element or the required-by-law element of the catalyst test. Alternatively, they claim that after the Supreme Court's decision in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001), the catalyst theory is no longer an appropriate basis for awarding attorney fees to parties, like Plaintiffs, who do not obtain some form of court-ordered relief. Because we conclude that Plaintiffs may not recover their costs even if the catalyst theory applies, we need not decide whether *Buckhannon* forecloses application of the catalyst theory in the context of § 505(d).

"This court reviews a district court's refusal to grant attorney's fees for abuse of discretion." *Center for Biological Diversity*, 262 F.3d at 1080. Underlying factual findings are reviewed for clear error; legal conclusions are reviewed *de novo*. *Id.* We first discuss whether Defendants' actions were discretionary or mandatory. We then address whether the catalyst test permits recovery of costs even when the defendant's actions were discretionary.

## II.    Were Defendants' Actions Mandatory?

Count I of Plaintiffs' complaint alleged that the EPA had a non-discretionary duty under CWA § 309(a)(3) "to take enforcement action . . .

-8-

regarding the illegal discharges of pollutants from Molycorp's waste rock dumps," and thus should be ordered to issue a compliance order or file a civil action against Molycorp. Aplt. App. at 80. Count II alleged that the EPA had a nondiscretionary duty under a combination of §§ 301(a), 301(e), and 402(a)(1) to either issue a permit for the known illegal discharges or prohibit them, and asked the court to order the EPA to take one of these actions. We now address whether EPA's issuance of a permit to Molycorp was mandated under the theory of either claim.

### A. Count I: The § 309(a)(3) Claim

Section 309(a)(3) reads: "Whenever on the basis of any information available to him the Administrator finds that any person is in violation of [effluent limitations] . . . , he shall issue an order requiring such person to comply with such section or requirement, or he shall bring a civil action . . . ." 33 U.S.C. § 1319(a)(3).

Despite the "he shall" language, the weight of authority is that § 309(a)(3) does not impose a mandatory duty on the Administrator. *See Sierra Club v. Whitman*, 268 F.3d 898, 900, 902-03 (9th Cir. 2001) (EPA does not have a mandatory duty to investigate and make findings, nor does it have a mandatory duty to take enforcement action once a finding is made.); *Dubois v. Thomas*, 820 F.2d 943, 947, 951 (8th Cir. 1987) (same); *Sierra Club v. Train*, 557 F.2d 485, 488-91 (5th Cir. 1977); *City of Olmstead Falls v. EPA*, 233 F. Supp. 2d 890, 901-

04 (N.D. Ohio 2002); 2 Envtl. Law Inst., Law of Environmental Protection § 9:4 (Sheldon M. Novick ed., 2002). *But see South Carolina Wildlife Fed'n v. Alexander*, 457 F. Supp. 118, 134 (D.S.C. 1978) ("309(a)(3) imposes a nondiscretionary duty on the Administrator to issue compliance orders once he 'finds' a violation of the [CWA]"); *Illinois v. Hoffman*, 425 F. Supp. 71, 77 (S.D. Ill. 1977) (Administrator's duty to act is triggered "[w]henever a violation is directed to the attention of the Administrator."); *cf. Save the Valley, Inc. v. U.S.E.P.A*, 99 F. Supp. 2d 981 (S.D. Ind. 2000) (holding that under CWA § 309(a)(2) the Administrator has a duty to make a finding when she becomes aware of violations, but specifically distinguishing that section from § 309(a)(3)).

The view that § 309(a)(3) does not restrict the Administrator's discretion is in keeping with the Supreme Court's pronouncement of "the general unsuitability for judicial review of agency decisions to refuse enforcement." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). The *Heckler* Court's explanation included the following passage pertinent to the present case:

> [A]n agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise. Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all. An agency generally cannot act against each technical violation of the statute it is charged with enforcing. The agency is far better equipped than the courts to deal

with the many variables involved in the proper ordering of its priorities.

*Id.* at 831-32. (We should add that these reasons for taking no action at all may also justify taking partial enforcement action rather than engaging in full enforcement.) The Court concluded that "an agency's decision not to take enforcement action should be presumed immune from judicial review under [the Administrative Procedure Act]." *Id.* at 832.

Plaintiffs acknowledge this authority to some extent. They explicitly concede that "under section 309(a)(3), there is no duty to make a finding . . . ." Aplt. Reply Br. at 19. They assert, however, that (1) the Administrator made the requisite finding here; and (2) once such a finding is made, § 309(a)(3) mandates enforcement action. We need not address Plaintiffs' second assertion. Even were we to create a circuit split by agreeing that a finding mandates enforcement action, we would still reject Plaintiffs' argument for two reasons.

First, the Administrator did not make the required finding that there had been a violation of the CWA. The person identified by Plaintiffs as having made the finding was an EPA geologist, Mr. Abshire. But EPA geologists have not been delegated the authority to make § 309(a)(3) findings. The EPA Delegations Manual delegates the Administrator's authority to make § 309(a) findings to the Regional Administrators and the Assistant Administrator for Enforcement and

Compliance Assurance.[1]  The delegations manual for Region VI in turn states that (1) this authority has been redelegated to the Director of the Compliance Assurance and Enforcement Division and the Director of the Water Quality Protection Division, and (2) the authority "may not be redelegated further."  Aple. Br. Addendum at vii.[2]

---

[1]The substance of the provision in the manual is as follows:

1.  AUTHORITY.  Pursuant to Section 309(a) of the Clean Water Act (CWA), to make findings of violation; to issue and serve notices of violation; to issue and obtain service of administrative compliance orders; to send copies of any orders issued to appropriate States; and to confer with persons to whom an order is issued.

2.  TO WHOM DELEGATED.  Regional Administrators and Assistant Administrator for Enforcement and Compliance Assurance.

3.  LIMITATIONS.
        a.  The Assistant Administrator for Enforcement and Compliance Assurance may exercise these authorities in multi-regional cases and cases of national significance.  In such cases, the Assistant Administrator for Enforcement and Compliance Assurance or his/her designee must notify any affected Regional Administrators or their designees when exercising the above authorities to issue orders and to confer with a person to whom an order is issued.
        b.  The Regional Administrators may exercise the above only for those matters initiated by the Regions.

4.  REDELEGATION AUTHORITY.  These authorities may be redelegated to the Division Director level, and the authority to confer with persons to whom an order has been issued may be further redelegated to the staff level.

[2]The substance of the provision is as follows:

1.        AUTHORITY.  Pursuant to Section 309(a) of the Clean Water Act (CWA):

(continued...)

Plaintiffs have neither alleged nor offered evidence that anyone with authority to make findings made the necessary finding here. Perhaps Plaintiffs could prove that someone with such authority knew that there was a statutory violation at the Molycorp mine. But "knowing" is not "finding." The statutory word "finds" would be a most peculiar way of expressing "knows." Indeed, Plaintiffs' proper acknowledgment that there is no duty to make a finding—i.e., that making a finding is discretionary—would make it impossible to equate "making a finding" with "knowing," which is not a matter of discretion.

The second flaw in Plaintiffs' argument is that even if § 309(a)(3) mandates certain action, it certainly did not mandate what the EPA ended up doing in this

---

[2](...continued)

    a.    to make findings of violation,
    b.    to issue and serve notices of violation,
    c.    to issue and obtain service of administrative compliance orders,
    d.    to send copies of any orders issued to appropriate States, and
    e.    to confer with persons to whom an order is issued.

2.    <u>TO WHOM DELEGATED</u>. Paragraphs 1a, b, c, d, and e are redelegated to the Director, Compliance Assurance and Enforcement Division, and Director, Water Quality Protection Division.

3.    <u>LIMITATIONS</u>. The authority of the Director, Compliance Assurance and Enforcement Division is limited to the NPDES Program and the authority of the Director, Water Quality Protection Division is limited to the Wetlands Protection Program.

4.    <u>REDELEGATION AUTHORITY</u>. The authority in subparagraph 1.e may be redelegated to staff level. All other authorities may not be redelegated.

case. Plaintiffs have failed to connect the relief obtained with the relief that allegedly would have been mandated. What the EPA did to moot Plaintiffs' suit was issue a permit to Molycorp. But issuance of a permit is not an act mandated by § 309(a)(3). What that section says the Administrator "shall" do if she finds a violation is issue a compliance order or bring a civil action. It says nothing about issuance of a permit.

In apparent recognition of this fact, Count I of Plaintiffs' complaint did not seek issuance of a permit, even as an alternative. The relief sought in that count was a court order that the EPA either issue a compliance order to Molycorp or bring a civil action against Molycorp. Even if that relief was mandatory, that relief was never obtained. (The fact that issuance of a permit could moot a claim that the Administrator failed to comply with § 309(a)(3) in itself strongly suggests that § 309(a)(3) is not a mandatory provision; but we need not resolve that matter on this appeal.)

For the above reasons, we hold that the EPA's action—issuance of a permit—was not mandated by § 309(a)(3).

**B. *Count II: The §§ 301(a)/301(e)/402(a)(1) Claim***

Plaintiffs assert that a nondiscretionary duty to enforce can also be derived from a combination of §§ 301(a), 301(e), and 402(a)(1) of the CWA. Section 301(a) states the general rule that "the discharge of any pollutant by any person

shall be unlawful," 33 U.S.C. § 1311(a). Section 301(e) provides, "Effluent limitations . . . shall be applied to all point sources of discharge of pollutants . . . ." 33 U.S.C. § 1311(e). And § 402(a)(1) reads, "[T]he Administrator may, after opportunity for public hearing, issue a permit for the discharge of any pollutant, or combination of pollutants, notwithstanding section [301(a)]." 33 U.S.C. § 1342(a)(1).

Plaintiffs' argument is that because all point sources "shall be" subject to effluent limitations, and all discharges "shall be unlawful" (in the absence of a § 402 permit), the EPA must "*either* permit [meaning 'issue a permit for'] or prohibit an illegal discharge." Aplt. Br. at 37. Relying on *Natural Resources Defense Council v. Costle*, 568 F.2d 1369, 1375 (D.C. Cir. 1977), Plaintiffs contend that despite the appearance of the word "may" in § 402(a)(1), the "EPA does not have the discretion to exempt a known discharge from the mandates of the CWA." Aplt. Br. at 38. That proposition, however, does not take Plaintiffs as far as they need to go. *Costle* merely stated that the EPA must either issue a permit for the offending discharge or leave the discharger subject to the total prohibition expressed in § 301. *Costle*, 568 F.2d at 1375. The court did not address whether the EPA must take action against a violator. And nothing in §§ 301(a), 301(e), or 402(a)(1) compels such action.

-15-

We conclude that the statutory language, particularly when read in light of *Heckler*, indicates that the EPA is not "required by" §§ 301(a), 301(e), and 402(a)(1) of the CWA to take enforcement action against all illegal discharges. Accordingly, EPA's issuance of the permit to Molycorp was not mandated by the statutory provisions relied upon in Plaintiffs' Count II.

## III. Can a Discretionary Act Be "Required By Law"?

Alternatively, Plaintiffs contend that the required-by-law element of the catalyst test can be established even in the absence of a mandatory duty. They argue that under this court's decision in *J & J Anderson Inc.*, 767 F.2d at 1475, a defendant's conduct was "required by law" for purposes of the catalyst test when it was not a "'wholly gratuitous response to an action that in itself was frivolous or groundless.'" Aplt. Br. at 26.

Plaintiffs' argument points to an apparent inconsistency in this circuit's formulation of the second element of the catalyst test. The great majority of our opinions simply recite the rule that the defendant's conduct in response to the plaintiff's suit must be "required by law." *See Ctr. for Biological Diversity*, 262 F.3d at 1081; *Powder River Basin Res. Council v. Babbitt*, 54 F.3d 1477, 1486 (10th Cir. 1995); *City of Chanute v. Williams Natural Gas Co.*, 31 F.3d 1041, 1048 (10th Cir. 1994); *Am. Council of the Blind of Colo., Inc. v. Romer*, 962 F.2d 1501, 1504 (10th Cir. 1992); *O'Connor v. City and County of Denver*, 894 F.2d 1210,

-16-

1226 (10th Cir. 1990); *Lopez v. Sullivan*, 882 F.2d 1533, 1536 (10th Cir. 1989);

*Luethje v. Peavine Sch. Dist. of Adair County*, 872 F.2d 352, 354 (10th Cir. 1989);

*Supre v. Ricketts*, 792 F.2d 958, 962 (10th Cir. 1986); *Operating Eng'rs Local*

*Union No. 3 of the Int'l Union of Operating Eng'rs, AFL-CIO v. Bohn*, 737 F.2d

860, 863 (10th Cir. 1984); *cf. Foremaster v. City of St. George*, 882 F.2d 1485,

1488 (10th Cir. 1989) (plaintiff must show that "he would have prevailed on the

merits").

   In *J & J Anderson*, 767 F.2d at 1475, however, we followed our recitation of

the two-part test with the following quotation from *Williams v. Leatherbury*, 672

F.2d 549, 551 (5th Cir. 1982): "Indeed, a defendant may unilaterally undertake

action that moots the suit. In such a case, a plaintiff may still recover attorney's

fees if he can show both a causal connection between the filing of the suit and the

defendant's action[,] *and that the defendant's conduct was required by law, i.e.,*

*not a wholly gratuitous response to an action that in itself was frivolous or*

*groundless.*" Some subsequent  opinions have repeated the emphasized language.

*See Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1199 (10th Cir. 1998); *Beard*

*v. Teska*, 31 F.3d 942, 953 (10th Cir. 1994); *Collins v. Romer*, 962 F.2d 1508,

1514 (10th Cir. 1992).

   On several occasions we have sought to reconcile what appear to be two

separate tests. In our most recent attempt we explained: "The essential part of

that language is 'that the defendants' conduct was *required by law*.'  The court's reference to 'a wholly gratuitous response to an action that in itself was frivolous or groundless' is obviously intended as only one example of the type of conduct referred to by the court."  *Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1052, 1055 (10th Cir. 1994).  *See Supre v. Ricketts*, 792 F.2d at 964 (Seth, J., concurring) ("the term 'gratuitous conduct' [has] acquired a definition by our cases . . . as an action not required by law"); *accord Goichman v. City of Aspen*, 859 F.2d 1466, 1471 (10th Cir. 1988).

Regardless of the formulation adopted in the opinion, however, our decisions are generally consistent.  All but one case that recites the required-by-law element either (1) found the second prong of the catalyst test was met because the plaintiff demonstrated (or the defendant did not contest) that it would have prevailed on the merits, *see Ctr. for Biological Diversity*, 262 F.3d at 1081; *Beard*, 31 F.3d at 953; *Collins*, 962 F.2d at 1514, 1517; *Luethje*, 872 F.2d at 354-56; *Foremaster*, 882 F.2d at 1489; (2) found an award of attorney fees inappropriate because the plaintiff would not have prevailed, *see Kan. Health Care Ass'n*, 31 F.3d at 1055; *City of Chanute*, 31 F.3d at 1049-50; *O'Connor*, 894 F.2d at 1226-27; *Goichman*, 859 F.2d at 1471; *Supre*, 792 F.2d at 963; *J & J Anderson*, 767 F.2d at 1477-78; (3) did not need to address the second prong because no causal connection was established, *see Am. Council of the Blind*, 962 F.2d at 1505-08;

*Operating Eng'rs*, 737 F.2d at 863-64; or (4) remanded on other grounds, *see Powder River Basin Res. Council*, 54 F.3d at 1486-87; *Lopez*, 882 F.2d at 1536-37.

The sole exception is *Ellis*, 163 F.3d 1186. In *Ellis* the plaintiff brought race discrimination and retaliation claims against the hospital where she worked and several of its employees. Our opinion recited in some detail the evidence supporting the plaintiff's claims. To determine whether she would actually have prevailed, however, would have required an assessment of the credibility of the pertinent witnesses. We ruled that the plaintiff was entitled to an award of attorney fees under the catalyst test, observing "that [the plaintiff's] action against the individual defendants was not frivolous or groundless . . . ." *Id*. at 1199.

*Ellis* can be reconciled with our other precedents on the ground that in *Ellis* we could not determine whether the defendants' actions were "required by law" without "'conducting the very trial mooted by a defendant's voluntary compliance.'" *Morris v. City of W. Palm Beach*, 194 F.3d 1203, 1210 (11th Cir. 1999) (quoting *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist.*, 17 F.3d 260, 263 n.1 (8th Cir. 1994)). When a full-scale evidentiary hearing would be required to determine whether the plaintiff would have prevailed, it is worth keeping in mind the Supreme Court's admonition that a "request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

-19-

That is not, however, the situation presented by this case. We can readily determine on the record before us that the action taken by the EPA was not a legally mandated response to Plaintiffs' lawsuit. Accordingly, even if the catalyst theory still applies to attorney fee requests under § 505(d) of the CWA, Plaintiffs are not entitled to recover their fees here.

It certainly appears that Plaintiffs performed a significant public service in bringing this pollution problem to the attention of the EPA and holding its feet to the fire. For that, they "can derive satisfaction from the fruit of [their] labors." *Goichman*, 859 F.2d at 1471. But there is no legal authority for us to order further compensation.

We **AFFIRM** the judgment of the district court.