**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**April 12, 2024**

**FOR THE TENTH CIRCUIT**

**Christopher M. Wolpert**
**Clerk of Court**

_____

I DIG TEXAS, LLC,

    Plaintiff Counterclaim
    Defendant - Appellee,

v.

KERRY CREAGER,

    Defendant - Appellant,

CREAGER SERVICES, LLC,

    Defendant Counterclaimant
    Third-Party Plaintiff -
    Appellant,

v.

THOMAS MAREK; MARY
MAREK,

    Third-Party Defendants -
    Appellees.

_____

DIGITAL JUSTICE FOUNDATION,

    Amicus Curiae.

No. 23-5046

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 4:22-CV-00097-CVE-JFJ)**
_____

Evan W. Talley (Douglas J. Sorocco, Jim V. John, and Jacob Oliphant with him on the briefs), Dunlap Codding, P.C., Oklahoma City, Oklahoma, for Appellants.

Zachary A.P. Oubre (Ronald T. Shinn Jr. with him on the briefs), McAfee & Taft, Oklahoma City, Oklahoma, for Appellees.

Andrew Grimm, Digital Justice Foundation, Omaha, Nebraska, for Amicus Curiae.

_____

Before **BACHARACH**, **McHUGH**, and **MORITZ**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This appeal involves advertisements pitting competitors against each other. In the pertinent advertisements, one seller targeted consumers wanting to buy American-made products. To target these consumers, the seller used copyrighted photographs of a competitor's products to underscore their connection to China. These advertisements led to claims under the Copyright Act and the Lanham Act.

The Copyright Act allows monetary relief when the improper use of copyrighted images leads to damages or profits. *See* Part 3(c), below. The profits can be either direct or indirect. *See* Part 3(c), below. Here the claim involves indirect profits. To recover, the claimant needed to show a nexus between the improper use of copyrighted images and profits. *See* Part 3(c), below. The question here is whether the claimant could make that showing without tying the copyrighted images to any of the infringer's profits. We

2

answer *no* because the absence of a proven nexus would require us to speculate about the possibility of any profits from use of the copyrighted images.

The advertisements also led to claims under the Lanham Act. These claims mainly involve the advertisements encouraging consumers to buy products that are American-made. At issue is the truth or falsity of the characterization of products as *American-made*. Is a boast about American-made products literally false when the business assembles products in the United States but uses some foreign components? We answer *no* because the boast itself is ambiguous.

**1.    I Dig Texas uses copyrighted photographs to advertise.**

This appeal involves competition between distributors of construction equipment called *skid steer attachments*.[1] One company calls itself *I Dig Texas* and sells attachments called *Texas Post Drivers*. A

---

[1]    The parties state that

- "[s]kid steers are construction equipment used for various purposes such as digging or hauling materials" and

- the parties sell attachments to the skid steers, "such as auger attachments, brush cutter attachments, and post driver attachments."

Appellants' App'x vol. II, at 230 n.1; *see also id.* at 404.

3

competitor, *Creager Services*, sells attachments called *Montana Post Drivers*.

I Dig Texas tried to appeal to consumers' preference for American-made products. To do so, I Dig Texas used Creager's photographs of Montana Post Drivers:





These products are made in China.

I Dig Texas promoted its products by discouraging consumers from buying products, like Creager's, that had been made in China. So I Dig Texas advertised by combining Creager's photographs of its skid steer attachments with text imploring consumers to buy products that had been made in the United States rather than in China:



2. **The district court grants summary judgment to I Dig Texas on Creager's federal claims.**

In district court, Creager claimed that (1) the use of these photographs had constituted copyright infringement and (2) the accompanying text had misrepresented the origin of I Dig Texas's products. For these claims, Creager argued that

- the use of its photographs had violated the Copyright Act and

- the misrepresentations had violated the Lanham Act.

5

In addition, Creager asserted state-law claims for deceptive trade practices, tortious interference, and unfair competition. I Dig Texas had also asserted its own state-law claims for deceptive trade practices, tortious interference with business relations, unfair competition, and defamation. The district court granted summary judgment to I Dig Texas on Creager's federal claims and remanded all of the state-law claims to state court.

### 3.     Creager failed to present evidence of any profit from the use of its photographs.

The elements of a claim for copyright infringement are

- the plaintiff's ownership of a valid copyright and

- the defendant's violation of an exclusive ownership right.

*Diversey v. Schmidly*, 738 F.3d 1196, 1204 (10th Cir. 2013). In district court, I Dig Texas sought summary judgment on this claim based on an affirmative defense (fair use) and a failure to establish a nexus between profits and the use of Creager's photographs.

#### a.     We consider the possibility of affirming based on Creager's failure to establish a nexus.

The district court relied on I Dig Texas's affirmative defense of fair use and declined to address the existence of a nexus between the use of Creager's photographs and the making of a profit. But we have discretion to consider affirming based on the failure to prove a nexus if this "ground [is] adequately supported by the record." *Elkins v. Comfort*, 392 F.3d 1159,

6

1162 (10th Cir. 2004). To determine whether to exercise this discretion, we consider whether

- the parties briefed the issue here and in district court,

- the issue involves a question of law rather than fact, and

- the parties had an opportunity to develop the record.

*Id.*

All these factors support consideration. The parties briefed the issue of a nexus both here and in district court. Because this issue arises on summary judgment, the court's inquiry involves a question of law on the existence of a genuine dispute of material fact. *Wise v. DeJoy*, 71 F.4th 744, 752 (10th Cir. 2023). To answer that inquiry, we have a fully developed record because the parties had an opportunity to present the district court with all of their material evidence bearing on I Dig Texas's profits from the use of Creager's photographs. *Stewart v. City of Okla. City*, 47 F.4th 1125, 1132 n.5 (10th Cir. 2022). We thus consider whether to affirm the award of summary judgment based on Creager's failure to present evidence of a nexus between I Dig Texas's profits and use of Creager's photographs.

**b.    We consider the availability of summary judgment based on the standard applicable in district court.**

Though the district court decided the availability of summary judgment, the court didn't address the issue involving a nexus between

7

I Dig Texas's profits and the use of Creager's photographs. Without a ruling on the issue of a nexus, we must decide the issue in the first instance.

Summary judgment would be appropriate upon a showing by I Dig Texas "that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To assess that showing, we must view the evidence and all justifiable inferences in the light most favorable to Creager. *See Wise*, 71 F.4th at 748.

### c.     The copyright claim required a nexus between the infringement and indirect profits.

For copyright infringement, the plaintiff can recover based either on its own damages or on the infringer's profits. *Harris Mkt. Rsch. v. Marshall Mktg. & Commc'ns, Inc.*, 948 F.2d 1518, 1524 (10th Cir. 1991). Creager seeks recovery based on I Dig Texas's profits rather than damages.

The profits can be either *direct* or *indirect*. E.g., *William A. Graham Co. v. Haughey*, 568 F.3d 425, 442 (3d Cir. 2009); *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 796 (8th Cir. 2003); *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002). The profits would be considered *direct*, for example, when an infringer sells the copyrighted work itself. *Haughey*, 568 F.3d at 442; *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 394 n.16 (3d Cir. 2016). And the profits would be considered *indirect*, for example, when the infringer

8

- enhances operations by infringing on a copyright, *Haughey*, 568 F.3d at 442, or

- adds sales because its advertisements included copyrighted images, *Andreas*, 336 F.3d at 796; *Mackie*, 296 F.3d at 916.

Creager relies on *indirect profits*. To prevail, Creager admittedly bore the initial burden to show a nexus between I Dig Texas's infringement and making of a profit. *Bonner v. Dawson*, 404 F.3d 290, 294 (4th Cir. 2005); *Andreas*, 336 F.3d at 796; *Mackie*, 296 F.3d at 915; *Univ. of Colo. Found. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1375 (Fed. Cir. 1999); *see* Appellants' Reply Br. at 41–42 (Creager's acknowledgment that it bore the burden to prove a nexus). That showing must go beyond speculation. *See Mackie*, 296 F.3d at 915–16.

### d.    Creager didn't present evidence of a nexus between I Dig Texas's profits and the infringement.

In district court, I Dig Texas argued that Creager hadn't shown a nexus between the profits and use of the photographs. In responding, Creager relied on I Dig Texas's use of two photographs in advertisements. But Creager didn't present any evidence of profits from the use of these photographs.

The photographs did depict Creager's skid steer attachments. But there's no evidence that I Dig Texas sold any more products because the advertisements had included these photographs. Without that evidence, Creager failed to show a nexus.

9

Creager argues that I Dig Texas had elsewhere failed to quantify its profits from the infringing photographs. But this argument conflates two separate inquiries. Creager admittedly bore the burden to show a nexus between the use of the copyrighted images and the making of a profit. *See* Part 3(c), above. If Creager had satisfied that burden, the court could presume that all of I Dig Texas's profits had come from the infringement without evidence that some of the profits had come from other sources. *See Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 796 (8th Cir. 2003) ("The burden of establishing that profits are attributable to the infringed work often gets confused with the burden of apportioning profits between various factors contributing to the profits."). But this presumption doesn't arise until the claimant (Creager) satisfies its threshold burden to establish a nexus. *See id.*

The Ninth Circuit addressed a similar issue in *Mackie v. Rieser*, 296 F.3d 909 (9th Cir. 2002). There the claimant alleged an infringing image on one page in a promotional booklet. 296 F.3d 909, 912–13 (9th Cir. 2002). In alleging indirect profit from that image, the plaintiff presented expert testimony that the infringer had expected a 1.5% profit from the booklet as a whole. *Id.* The Court of Appeals held that this expert testimony wouldn't satisfy the plaintiff's threshold burden of showing that

10

anyone bought from the infringer because its promotional booklet had included a single infringing image. *Id.* at 916.[2]

The same is true here. Unlike the claimant in *Mackie*, Creager presented *no* evidence that I Dig Texas had made any money from the advertisements bearing the copyrighted images; Creager showed only that I Dig Texas had included copyrighted images in its advertising. But Creager didn't present evidence that anyone had bought something from I Dig Texas because of these advertisements. And even if someone had bought something from I Dig Texas based on these advertisements, there's no reason to believe that the two photographs would have made a difference to any consumers.

Given Creager's failure to show a connection between the photographs and I Dig Texas's profits, we affirm the award of summary judgment based on the absence of a nexus.

4. **I Dig Texas's advertisements aren't literally false.**

Creager also invoked the Lanham Act, claiming false advertising and false designation of origin. On these claims, Creager needed to show that I Dig Texas had "made a false or misleading description of fact or

---

[2]    The court explained: "Even if such an aspirational yield percentage could be applied to determine how many people subscribed because of the brochure, such a rudimentary analysis cannot determine how many of those individuals subscribed *because of Rieser's work*." *Mackie*, 296 F.3d at 916 (emphasis in original).

representation of fact in a commercial advertisement." *Vitamins Online, Inc. v. Heartwise, Inc.*, 71 F.4th 1222, 1233 (10th Cir. 2023) (quoting *Bimbo Bakeries USA, Inc. v. Sycamore*, 29 F.4th 630, 643 (10th Cir. 2022)).

### a.    We consider literal falsity in the first instance.

The district court concluded that Creager had failed to show a false or misleading fact in I Dig Texas's advertisements. For this conclusion, the district court reasoned that I Dig Texas's advertisements had explained the use of foreign components. Creager argues that this explanation didn't exist in the advertisements underlying the claims.

But I Dig Texas urges affirmance on alternative grounds, arguing that the advertisements weren't literally false. Again, we may affirm on alternative grounds supported by the record after considering whether

- the parties briefed the issue here and in district court,

- the issue involves a question of law rather than fact, and

- the parties had an opportunity to develop the record.

*Elkins v. Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004).

All these factors support consideration of the alternative ground to affirm. Both parties briefed literal falsity in district court and on appeal. And when we review the grant of summary judgment, we conduct a legal inquiry on the existence of a genuine dispute of material fact. *Wise v. DeJoy*, 71 F.4th 744, 752 (10th Cir. 2023). For that inquiry, our record is

12

fully developed because the parties had a chance to present whatever evidence they wished on the truth or falsity of I Dig Texas's advertisements. *See Stewart v. City of Okla. City*, 47 F.4th 1125, 1132 n.5 (10th Cir. 2022).

Because our inquiry differs from that of the district court, we decide in the first instance whether I Dig Texas was entitled to summary judgment on the issue of falsity. *See id.* at 1132–36 (concluding that no genuine dispute of material fact existed on an issue that differed from the issue underlying the district court's grant of summary judgment). Summary judgment is appropriate if I Dig Texas demonstrates that there is no genuine dispute of material fact on literal falsity. *See* Fed. R. Civ. P. 56(a). We view the evidence and draw all reasonable inferences in Creager's favor. *See Wise*, 71 F.4th at 748.

**b.     Creager needed to show that the statements were literally false.**

Under the Lanham Act, a claimant can show falsity in one of two ways:

1.     The statement is literally false.

2.     The statement is literally true, but "likely to mislead or confuse customers."

*Vitamins Online, Inc. v. Heartwise, Inc.*, 71 F.4th 1222, 1235 (10th Cir. 2023) (quoting *Zoller Lab'ys, LLC v. NBTY, Inc.*, 111 F. App'x 978, 982

13

(10th Cir. 2004) (unpublished)). Creager relies on the literal falsity of I Dig Texas's advertisements.

A statement can be literally false only if it is unambiguous. *See Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 57 (2d Cir. 2022); *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014); *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 737 (6th Cir. 2012). So an ambiguous statement can't be literally false. *See Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007) ("[I]f the language or graphic is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false." (collecting cases)). For example, a statement without objective meaning can't be literally false. *See Bimbo Bakeries USA, Inc. v. Sycamore*, 29 F.4th 630, 644–47 (10th Cir. 2022) (stating that a representation can be actionable only if it's objectively capable of being determined to be true or false).

**c.    The statements about the place of manufacture were ambiguous.**

Creager points to various advertisements about where I Dig Texas's products had been made. For example, Creager presented evidence of advertisements stating that I Dig Texas's products had been made in *America* or in the *United States*. So we must inquire whether these advertisements were ambiguous. That inquiry is a question of law. *See*

*Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 615 n.2 (6th Cir. 1999) (stating that ambiguity of a statement entails a question of law); *see also Allsup, Inc. v. Advantage 2000 Consultants Inc.*, 428 F.3d 1135, 1138 (8th Cir. 2005) ("A literally false statement can be determined as a matter of law . . . .").

We must decide this issue of law based on the undisputed evidence about the making of I Dig Texas's products. Some had been assembled in the United States, others in China. Even for the products that I Dig Texas had assembled in the United States, some components had come from overseas. For example, I Dig Texas had used a nitrogen power cell made in China. And some of the nuts and bolts had come from Canada.

But what does it mean to *make* a product in the United States or in America? Did I Dig Texas make a literally truthful statement because it assembled some products in the United States?

Creager argues that the advertisements were false because some of the components had come from other countries. But the term *make* could refer either to the origin of the components or to the assembly of the product itself. For example, if Chrysler says that its cars are American-made, someone might regard the statement as truthful if Chrysler assembles the cars in the United States even if some components came from overseas.

The same could be true of I Dig Texas's advertisements. Even if some components had come from China or Canada, I Dig Texas assembled some of its products in the United States. I Dig Texas's advertisements are thus ambiguous when they say that the products are made in the United States or in America.[3] With this ambiguity, the advertisements cannot be literally false. *See Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 736–37 (6th Cir. 2012) (concluding that a statement could not be literally false because it was ambiguous on whether it referred to one or multiple products).

But Creager also argues that I Dig Texas represented that *all* its products had been made in the United States. For this argument, Creager points out that I Dig Texas sold some products that had been assembled overseas or that had included foreign components. The resulting question

---

[3]     At summary judgment, Creager invoked a Federal Trade Commission policy statement on designation that a product had originated in the United States. Appellants' App'x vol. IV, at 880. Even if the FTC policy were otherwise instructive, it would not bind us when addressing false advertising under the Lanham Act. *See FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 385 (1965); *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 973 (7th Cir. 1999). And even if we were to consider the FTC policy, it acknowledges the absence of a "single 'bright line' to establish when a product is or is not . . . made in the United States." 62 Fed. Reg. 63,756, 63,768 (Dec. 2, 1997). Given the absence of a "bright line," the FTC considers multiple factors, including the place of the final assembly and the nature of any foreign components. *Id.* at 63,768–69. So the FTC policy doesn't remove the ambiguity of the phrase *made in the United States* or *American-made*.

is whether I Dig Texas ever represented that all its products had been made in the United States.

Creager answers *yes* because I Dig Texas said on its website: "We Provide 100% American Made Skid Steer Attachments." Appellants' App'x vol. III, at 530. Creager argues that by putting this statement on the website, I Dig Texas implied that all of its skid steer attachments had been made entirely in America, assembled domestically from domestic components.

Granted, a statement can be literally false by necessary implication. *Vitamins Online, Inc. v. Heartwise, Inc.*, 71 F.4th 1222, 1235 (10th Cir. 2023). But again, an ambiguity exists in the reference to *100%*. The reference could mean, as Creager urges, that 100% of I Dig Texas's skid steer attachments had been assembled in America with American components.

But the reference could also mean that only some of the products consist entirely of domestic components assembled in the United States.

Or *100%* could refer only to assembly of the final product rather than the origin of the components. So when the assembly takes place in America with some foreign components, someone might reasonably consider the product *100% American-made*. With this interpretation, the statement on the website could mean only that I Dig Texas sold some skid steer

17

attachments that had been assembled domestically (without any representation about the origin of the components).

The statement on I Dig Texas's website is thus just as ambiguous as the advertisements.[4] Given that ambiguity, the statement on I Dig Texas's website doesn't necessarily imply a literal falsehood about the origin of the products.[5]

### d.    The patriotic symbols are ambiguous because they can't objectively be verified as true or false.

Creager also argues that I Dig Texas used patriotic symbols (like an American flag) to imply that the products had been made in the United States. Granted, patriotic symbols could imply that the products were

---

[4]    I Dig Texas also contends that the statement on its website was not literally false because it sold some products made entirely in the United States, including American-made components. But I Dig Texas

- relies on evidence not included in its statement of undisputed material facts and

- made this argument for the first time in its reply brief for summary judgment.

We need not address these procedural aspects, however, because we regard the statement as ambiguous.

[5]    The district court reasoned that Creager's versions of the advertisements had been incomplete because the complete versions had acknowledged the use of foreign components. Creager disagrees, arguing that it relied on advertisements that differed from the advertisements that I Dig Texas submitted to the district court. We need not address the versions of the advertisements that I Dig Texas submitted in district court.

18

American-made. But the symbols couldn't objectively be verified as true or false. As a result, the use of American symbols was ambiguous and couldn't render the advertisements literally false.

We addressed a similar issue in *Bimbo Bakeries USA, Inc. v. Sycamore*, 29 F.4th 630 (10th Cir. 2022). There a bakery advertised its loaves of bread as "Fresh. Local. Quality." *Id.* at 646. The issue was whether the word *local* could be considered literally false. We answered *no*. *Local* could mean different things—local workers, local materials, locally based, or involvement with local organizations. *Id.* at 644. Though the word implied that the loaves had been made in the same community, no one could verify the objective truth of the advertisement's reference to the loaves as *local* because the word was ambiguous. *Id.* at 646–47.

The same is true of the patriotic symbols in I Dig Texas's advertisements. The symbols bore an implication, like the word *local* in the bakery's advertisement for its loaves of bread. But no one could verify the objective truthfulness of the word *local* because the word could mean different things, and the same is true of I Dig Texas's patriotic symbols. So those symbols are ambiguous and cannot render the advertisements literally false.

* * *

Viewed in the light most favorable to Creager, the evidence does not support a finding of literal falsity. Because Creager has argued only literal

19

falsity, I Dig Texas is entitled to summary judgment on the claims under the Lanham Act. We therefore uphold the district court's award of summary judgment on these claims.

**5.      The district court did not err in declining supplemental jurisdiction over the state-law claims.**

By granting summary judgment to I Dig Texas on the claims of copyright infringement, false advertising, and false designation of origin, the district court disposed of all the federal claims.[6] With the disposition of all the federal claims, the district court declined to exercise supplemental jurisdiction over the remaining state-law claims and remanded the case to state court.[7] Creager argues that the district court abused its discretion by declining supplemental jurisdiction and remanding the state-law claims to state court.

In addressing that argument, we apply the abuse-of-discretion standard. *See Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717,

---

[6]      Creager suggests that the district court remanded the claim for an injunction under the Lanham Act. But the district court granted summary judgment to I Dig Texas on all the claims under the Lanham Act. As a result, the grant of summary judgment encompassed the claim for an injunction. *See Hutchinson v. Pfeil*, 105 F.3d 566, 569–70 (10th Cir. 1997) (holding that a grant of summary judgment against a defendant seeking injunctive relief "amounts to a practical denial of injunctive relief" even if the district court does not expressly say so).

[7]      I Dig Texas had initiated the action in state court; Creager removed the action to federal court.

723 (10th Cir. 2011). The "district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial." *Foxfield Villa Assocs., LLC v. Robben*, 967 F.3d 1082, 1103 (10th Cir. 2020) (quoting *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002)).

The district court declined to exercise supplemental jurisdiction over the remaining state-law claims after considering

- the parties' efforts to prepare for a federal trial and

- the novelty of the issues raised under Oklahoma law.

Balancing these factors, the court decided to decline supplemental jurisdiction and remand the state-law claims to state court. This decision fell within the district court's discretion. *See id.* at 1102–03 (concluding that the district court didn't abuse its discretion in remanding the remaining claims to state court even though the parties had extensively prepared to litigate these claims in federal court). We therefore affirm the district court's decision to (1) decline supplemental jurisdiction over the remaining state-law claims and (2) remand these claims to state court.

* * *

We affirm. The district court did not err by

- granting summary judgment to I Dig Texas on the claims of copyright infringement, false advertising, and false designation of origin,

21

- declining to exercise supplemental jurisdiction over the remaining state-law claims, and

- remanding these state-law claims to state court.