**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 7, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

CITIZENS FOR
CONSTITUTIONAL INTEGRITY;
SOUTHWEST ADVOCATES, INC.,

      Plaintiffs - Appellants,

v.

THE OFFICE OF SURFACE
MINING RECLAMATION AND
ENFORCEMENT; DOUGLAS J.
BURGUM, in his official capacity
as Secretary of the Department of
the Interior; GLENDA OWENS, in
her official capacity as Acting
Director of the Office of Surface
Mining Reclamation and
Enforcement; LAURA DANIEL
DAVIS, in her official capacity as
Senior Advisor to the Secretary,
exercising the delegated authority of
the Assistant Secretary for Land and
Minerals Management; and UNITED
STATES OF AMERICA,

      Defendants - Appellees.

------------------------------

GCC ENERGY, LLC,

      Intervenor - Appellee.

No. 25-1006

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:21-CV-00923-GPG-STV)**

_____

Jared S. Pettinato, The Pettinato Firm, Washington, D.C., for Plaintiffs–Appellants.

Peter M. Torstensen, Jr., Deputy Assistant Attorney General (Adam R.F. Gustafson, Acting Assistant Attorney General, and Allen M. Brabender, Attorney, with him on the briefs), U.S. Department of Justice, Environmental and Natural Resources Division, Washington, D.C., for Defendants–Appellees.

Adam T. DeVoe and Michelle C. DeVoe, DeVoe Law, Denver, Colorado, for Intervenor–Appellee GCC Energy, LLC.

_____

Before **HARTZ**, **BACHARACH**, and **CARSON**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This case involves a request to expand an underground coal mine. The request triggered statutory requirements, such as administrative approval of a revision to the mine operator's permit. *See* 30 U.S.C. § 1261. A federal agency approved the revision; but the agency then encountered challenges from two advocacy groups, Citizens for Constitutional Integrity and Southwest Advocates, Inc. These challenges concerned the potential effect of the expansion on water resources.

The challenges rely on the Surface Mining Control and Reclamation Act, 30 U.S.C. §§ 1270 and 1276. Section 1270 provides a remedy when an

agency fails to carry out nondiscretionary obligations. *Citizens for Const. Integrity v. United States*, 70 F.4th 1289, 1308–09 (10th Cir. 2023). And Section 1276 allows judicial review when the challenger participated in the agency's permit-review process. *Id.* at 1312–14. These statutes don't fit the advocacy groups' challenges.

**1.    The operator obtained approval to expand the mine.**

The operator (GCC Energy, LLC) had a permit to operate the mine, which is located beneath Indian lands. In 2018, GCC Energy wanted to expand the mine. To do so, GCC Energy asked the Office of Surface Mining Reclamation and Enforcement to approve revision of the permit. *See* 30 U.S.C. § 1261; *see also* 30 C.F.R. § 750.6(a)(1) (making the agency "the regulatory authority on Indian lands"); 30 U.S.C. § 1291(9) (defining "Indian lands").

To expand the mine, GCC Energy also needed a new federal lease and approval of a modification to the existing operations plan. *See* 30 U.S.C. §§ 201, 207(c). So GCC Energy asked the Bureau of Land Management to issue a new lease, and the Office of Surface Mining Reclamation and Enforcement considered whether to approve the modification.

Given the related requests, the two agencies (the Office of Surface Mining Reclamation and Enforcement and the Bureau of Land Management) combined to prepare an environmental assessment and

solicited public comments. After the environmental assessment was issued, GCC Energy obtained a revised permit, a new lease, and approval of the modified operations plan.

## 2.    The expansion is opposed.

When the advocacy groups learned of the expansion, they notified the pertinent agency (the Office of Surface Mining Reclamation and Enforcement) of an intent to sue for violating a rule known as *the Stream Protection Rule*. Though Congress had rescinded the rule, the advocacy groups contested the validity of the rescission and sued based on the Stream Protection Rule. We rejected the suit and the advocacy groups' reliance on the Stream Protection Rule. *Citizens for Const. Integrity v. United States*, 57 F.4th 750 (10th Cir. 2023).

In a later appeal, the advocacy groups relied partly on Section 1270;[1] and we held that this section couldn't support preliminary injunctive relief, reasoning that the agency had carried out all the nondiscretionary duties that had been identified. *Citizens for Const. Integrity v. United States*, 70 F.4th 1289 (10th Cir. 2023).

Following our decisions, the advocacy groups amended their claims, again invoking Section 1270 and adding a claim under Section 1276. The

---

[1]    The advocacy groups also sued under the Administrative Procedure Act. But the claim under that statute isn't at issue here.

district court denied the advocacy groups' petition for judicial review, and they appeal.

**3.    Claim Under Section 1270**

In this appeal, the advocacy groups rely in part on Section 1270(a)(2). This reliance is misguided because

- the advocacy groups failed to provide proper notice and

- the alleged errors involve discretionary actions.

**a.    Inadequacy of Notice**

The district court rejected the claim under Section 1270(a)(2), reasoning that we had rejected essentially the same claim. *Citizens for Const. Integrity v. Off. of Surface Mining Reclamation & Enf't*, No. 21-CV-00923-GPG-STV, 2024 WL 5317376, at *2 (D. Colo. Nov. 8, 2024). The advocacy groups challenge this reasoning, arguing that

- our prior opinion wasn't binding and

- the new version of the complaint includes additional claims resting on nondiscretionary obligations under Sections 1268 and 1271.

Even if the district court had erred, however, the advocacy groups would still have needed to show adequate notice. 30 U.S.C. § 1270(b)(2); 30 C.F.R. § 700.13(a).

In the notice, a claimant must provide

- the provision containing the mandatory act or duty that the agency allegedly failed to carry out and

5

- "[s]ufficient information" to identify how the agency allegedly failed to carry out a mandatory act or duty.

30 C.F.R. § 700.13(f)(1)–(2). The notice gives the agency a chance to take corrective action. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987) (stating that the purpose of a similar notice provision under the Clean Water Act was to give the alleged violator a chance to bring itself into complete compliance and render the suit unnecessary); *see also Water Keeper All. v. U.S. Dep't of Def.*, 271 F.3d 21, 29 (1st Cir. 2001) (concluding that a similar requirement for a suit under the Endangered Species Act requires notice of 60 days in order to provide "agencies with an opportunity to resolve the dispute and take any necessary corrective measures before a resort to the courts"); *Friends of Yosemite Valley v. Norton*, 348 F.3d 789, 803 (9th Cir. 2003) (stating that a similar notice requirement under the Clean Water Act reflected congressional intent to allow the agency to render litigation unnecessary).[2]

The issue arose in district court when the agency argued that the advocacy groups hadn't provided adequate notice. The district court didn't address this issue. But we can address an issue when

- "the parties briefed the issue here and in district court,"

- "the issue involves a question of law rather than fact," and

---

[2]    We have elsewhere noted that the pertinent language in Section 1270(a)(2) resembles the language in the Clean Water Act. *Citizens for Const. Integrity v. United States*, 70 F.4th 1289, 1296 (10th Cir. 2023).

- "the parties had an opportunity to develop the record."

*I Dig Texas, LLC v. Creager*, 98 F.4th 998, 1009 (10th Cir. 2024).

These factors are satisfied. First, the adequacy of the notice was briefed both in district court and on appeal. Second, satisfaction of the notice requirement involves a question of law. *See Osterhout v. Bd. of Cnty. Comm'rs of LeFlore Cnty.*, 10 F.4th 978, 984 n.3 (10th Cir. 2021) (stating that "the adequacy of notice involves an issue of law"). Third, the parties have had an adequate opportunity to develop the record as to the adequacy of the notice.

Because these factors support consideration of the agency's argument, we address the adequacy of the notice. To do so, we consider the notice requirements, which Congress delegated to the Office of Surface Mining Reclamation and Enforcement. 30 U.S.C. § 1270(b)(2). Under these requirements, the party providing notice had to

- identify the statutory provision "containing the mandatory act or duty not performed" and

- provide "sufficient information to identify the omission alleged to constitute the failure to perform a mandatory act or duty."

30 C.F.R. § 700.13(f)(1)–(2); *see also* pp. 5–6, above.[3]

---

[3]    Before suing, the party must ordinarily wait at least 60 days after giving notice. 30 U.S.C. § 1270(b)(2). But the wait is unnecessary when the alleged violation would immediately affect a person's legal interest or create an imminent threat to health or safety. *Id.*

The advocacy groups provided the agency with notice of an intent to sue. But that notice didn't address the allegations advanced here, which involve the agency's failure to

- suspend or revoke the permit based on noncompliance with current standards for protecting water resources (under 30 U.S.C. § 1211(c)(1)),

- penalize the operator for violating the Surface Mining Control and Reclamation Act and related regulations (under 30 U.S.C. § 1268), and

- investigate the operator's violation of the statute and related regulations (under 30 U.S.C. § 1271).

Instead of referring to these allegations, the advocacy groups focused in the notice on shortcomings in the environmental assessment preceding GCC Energy's application for a revised permit.

On appeal, the advocacy groups argue that the notice would have flagged their concerns about the agency's analysis of the groundwater baseline and the use of surface water. This argument skirts the framing of the groups' objections in the notice. There the advocacy groups had objected based on the Stream Protection Rule:

- "[The agency] did not analyze the Dunn Ranch Approval to determine whether it complied with the fundamentally different regulatory regime that the Stream Protection Rule created."

- "The analyses in the Dunn Ranch Approval violated the Stream Protection Rule in four ways."

8

- "[The advocacy groups] demand you to rescind the Dunn Ranch Approval because it violates the Stream Protection Rule."

- "Because the Stream Protection Rule remained in place, [the agency] breached its duties by failing to comply."

- "The analysis of the Dunn Ranch Approval's effects did not comply with the Stream Protection Rule."

- "The Dunn Ranch [environmental assessment] did not apply the Stream Protection Rule, and that legal flaw led to lower flows into the La Plata River, and it also increased the risks of undetected groundwater contamination."

- "[The agency's] failure to apply the Stream Protection Rule undermined its entire [Surface Mining Control and Reclamation Act] analysis."

- "[The Stream Protection Rule] requires permitees to identify the premining baseline to ensure that 'perennial streams located outside the permit area will retain perennial flows . . . during and after mining and reclamation.'"

- "If [the agency] had completed the analysis the Stream Protection Rule required, it would have realized that the Mine was taking so much water from the La Plata River that it risked the river running dry more often."

- "These two losses to the La Plata River, together, demonstrate greater impacts than the Dunn Ranch [environmental assessment] analyzed, and those losses demonstrate material damage to the hydrologic balance outside the permit area in violation of the Stream Protection Rule."

- "Failing to account for that lost groundwater violated the Stream Protection Rule."

- "Also, [the agency] failed to assess the 'probable cumulative impacts of all anticipated coal mining on the hydrologic balance in the cumulative impact area,' and that violated the Stream Protection Rule."

9

- "[The agency] failed to monitor the groundwater for all contaminants the Stream Protection Rule required."

- "The Stream Protection Rule required [the agency] to monitor for more contaminants than GCC [Energy] has completed or is completing, to account for drought conditions, and to consider point-source discharges from other mines."

- "The Stream Protection Rule required monitoring for the [specified] contaminants, but GCC [Energy] did not analyze for those contaminants."

- "[The agency] failed to require GCC [Energy] to monitor for all of the pollutants that the Stream Protection Rule required."

Appellants' App'x vol. 1, at 15–22 (citations omitted).

Here, however, the advocacy groups drop their reliance on the Stream Protection Rule and rely instead on the agency's failure to investigate GCC Energy for violating the Surface Mining Control and Reclamation Act and related regulations. The groups' notice didn't say anything about these violations.

Nor did the notice refer to the statutory provisions at issue. For example, the advocacy groups argue that the agency bears a nondiscretionary obligation to investigate and issue penalties under Sections 1268 and 1271. But the notice didn't mention either statutory section. *See Shark River Cleanup Coal. v. Twp. of Wall*, 47 F.4th 126, 136 (3d Cir. 2022) (concluding that a claimant's notice was inadequate when it failed to identify the specific provision being violated).

10

The advocacy groups also rely on Section 1211(c)(1), stating that it requires suspension or revocation of GCC Energy's permit. But the notice didn't mention the authority under Section 1211 to suspend or revoke a permit. Instead, the notice referred to Section 1211(c)(1) only in connection with the regulations governing coal mining and the administration of regulatory programs.

The advocacy groups suggest that they needed only to cite the applicable statutory provisions "to the extent known." Appellants' Reply Br. at 26–28 (quoting 30 C.F.R. § 700.13(f)). But the advocacy groups don't explain why they couldn't have known about the statutory provisions. In fact, the author of the notice was the same attorney who is representing the advocacy groups here.

Despite the legal representation, the advocacy groups didn't

- identify any of the pertinent statutory provisions or

- provide information about the agency's lapses in carrying out nondiscretionary duties.

So the advocacy groups can't obtain relief under Section 1270(a)(2) for the agency's failure to

1. investigate GCC Energy for violating the Surface Mining Control and Reclamation Act and related regulations or

2. issue penalties or to suspend the permit.

**b.      Inapplicability of Section 1270(a)(2) to Discretionary Functions**

Even if the notice had sufficed, the advocacy groups couldn't shoehorn their claims into Section 1270(a)(2). This section covers only an agency's failure to carry out a nondiscretionary duty. *Citizens for Const. Integrity v. United States*, 70 F.4th 1289, 1295 (10th Cir. 2023). A duty is nondiscretionary only when "there is no room for choice by the agency." *Id.* at 1305. The resulting question is whether the advocacy groups have identified duties falling outside the agency's room for choice.[4]

The advocacy groups rely on three statutory provisions:

1.      30 U.S.C. § 1211(c)(1),

2.      30 U.S.C. § 1271, and

3.      30 U.S.C. § 1268.

Each provision permits the agency to exercise discretion.

Section 1211(c) lists "duties" that the Secretary of the Interior "shall" perform. These duties include "the suspension, revocation, or withholding of any permit for failure to comply with any of the provisions of this chapter or any rules and regulations adopted pursuant thereto." 30

---

[4]      The advocacy groups argue that we should remand rather than address the question on our own. But the nature of the agency's duties involves legal issues that we can address when affirming on alternative grounds. *See I Dig Texas, LLC v. Creager*, 98 F.4th 998, 1009 (10th Cir. 2024); *see also* pp. 6–7, above.

U.S.C. § 1211(c)(1). The advocacy groups claim that the agency violated these duties by failing to

- investigate the mine based on GCC Energy's violations of the water-protection standard and

- suspend the permit because of the violations.

The need to investigate is governed by 30 U.S.C. § 1271. Under this section, the agency "shall" order federal inspection of the mine if the Secretary has "reason to believe" that GCC Energy is violating the Surface Mining Control and Reclamation Act or a statutory permit condition. 30 U.S.C. § 1271(a)(1).

The decision to investigate is at least partly discretionary because it turns on how the agency assesses the likelihood of wrongdoing by the operator. *See Sierra Club v. Whitman*, 268 F.3d 898, 902–04 (9th Cir. 2001) (classifying a similar decision as *discretionary* when it involved the EPA's choices). And if an investigation is opened, the agency may enjoy further discretion in deciding how to proceed and whether to take enforcement action. *See Amigos Bravos v. EPA*, 324 F.3d 1166, 1171 (10th Cir. 2003) (observing that the weight of authority is that an agency has discretion on whether to take an enforcement action, for purposes of a similar statute, even when the agency finds a violation).

Similarly, Section 1268 governs functions that are discretionary. This section addresses civil penalties for violating the conditions of a permit or

13

the Surface Mining Control and Reclamation Act. *See* 30 U.S.C. § 1268(a). The language is permissive, giving discretion to the agency: "[A]ny permittee who violates any permit condition or who violates any other provision of this subchapter, *may* be assessed a civil penalty by the Secretary." *Id.* (emphasis added).[5]

Granted, penalties exist for anyone who "knowingly makes any false statement, representation, or certification, or knowingly fails to make any statement, representation, or certification in any application, record, report, plan, or other document filed or required to be maintained [pursuant to the Act]." 30 U.S.C. § 1268(g). But the agency has discretion to determine whether an inspection would trigger these penalties. *See* pp. 13–14, above. The alleged errors thus involve duties falling within the agency's discretion.[6]

* * *

---

[5]    Section 1268 uses the term "shall" when discussing statutory violations triggering cessation orders. *See* 30 U.S.C. § 1268(a) ("the civil penalty shall be assessed").

[6]    In their reply brief, the advocacy groups also argue that the agency needed to obtain information about GCC Energy's alleged violations of the Surface Mining Control and Reclamation Act. But the groups raised this argument too late because they hadn't made it in either the district court or their opening appellate brief. *See United States v. Salti*, 59 F.4th 1050, 1059 (10th Cir. 2023) (concluding that the appellants waived an argument by omitting it in district court and in the opening appellate brief).

Given the inadequacy of the notice and the discretionary nature of the agency actions, a judicial remedy isn't available under Section 1270.

### 4.     Claims Under Section 1276

The advocacy groups also invoke Section 1276, alleging a failure to determine the baseline for groundwater or analyze the effect of mining operations on the use of surface water. *See* 30 C.F.R. § 784.14(b)(1)–(2). We have held that Section 1276 would have been available if the advocacy groups had participated in the agency's permit-review process. *Citizens for Const. Integrity v. United States*, 70 F.4th 1289, 1314 (10th Cir. 2023). But the advocacy groups didn't participate in that process, and they haven't otherwise shown a right to judicial review under Section 1276.

The advocacy groups say that they "commented on the permit and requested notice of the permit decision five times." Appellants' Opening Br. at 35. They did ask five times about the status of various requests, but these questions didn't include comments about the merits of GCC Energy's application for revision of the permit.

Elsewhere, though, the advocacy groups deny that they had a chance to participate in the permit-review process, stating that (1) they couldn't have known when the agency had approved the application for a revised permit and (2) their comments about a related document should have been treated as objections to the permit itself. These arguments reflect a misunderstanding of the permit-review process and the pertinent statute.

For the advocacy groups, participation in this administrative process involved three steps:

1.    objecting to the permit application,

2.    requesting a rehearing of the permit decision, and

3.    lodging an administrative appeal after objecting and seeking rehearing.

30 U.S.C. § 1263(b) (opportunity to object to the permit application); 30 U.S.C. § 1264(c) (right to request a rehearing); 30 U.S.C. § 1264(f) (right to an administrative appeal after objecting to the permit application). For the sake of argument, we may assume that an objection to the application for a revised permit would have relieved the advocacy groups of a need to seek rehearing or lodge an administrative appeal. But the advocacy groups didn't object to the application.

Given that failure to object, the advocacy groups had no right to notice when the agency approved the application. To the contrary, that notice was required only for parties who had commented on or objected to the application itself. *See* 30 C.F.R. § 773.19(b)(1) (requiring the agency to notify each person who commented on or objected to the permit application or participated in an informal conference); *see also* 30 U.S.C. § 1264(a) (requiring notice to the parties who participated in the administrative proceedings resulting in issuance of the permit). Because the advocacy groups didn't comment on or object to the application for a

revised permit, they couldn't pursue the remaining steps in the permit-review process.[7]

The advocacy groups argue that 30 U.S.C. § 1264(f) allows them to seek judicial review because the agency did not provide the required notice of the decision to issue the revised permit. For this argument, however, the advocacy groups assume that their comments about the environmental assessment would have required notice when the agency approved the revised permit. But no such right to notice existed because the advocacy groups hadn't commented on or objected to the application itself.

Granted, members from one of the groups commented on the environmental assessment. But these comments didn't say anything about the application for a revised permit or refer to the underlying requirements. In fact, the members commented on the environmental assessment before GCC Energy had even applied for a revised permit. So the comments didn't address the permit application itself.[8]

---

[7]    Because the advocacy groups never objected to or commented on the application, we need not consider which party bears the burden of proof on the availability of administrative remedies.

[8]    In their reply brief, the advocacy groups also argue that regulations required notice to everyone who had shown an interest in the permit application. But the advocacy groups waived this argument by failing to make it in their opening brief. *See United States v. Leffler*, 942 F.3d 1192, 1197 (10th Cir. 2019) ("[W]e generally do not consider arguments made for the first time on appeal in an appellant's reply brief and deem those arguments waived.").

The advocacy groups reject any distinction between the administrative proceedings for the environmental assessment and the issuance of the permit, arguing that "[Section 1264(f)'s] plain text includes *all* of the administrative proceedings regarding the permit." Appellants' Reply Br. at 7 (emphasis added). But the rest of Section 1264 addresses the agency's consideration of the application for a mining permit, 30 U.S.C. § 1264(a)–(e), and the advocacy groups err by reading the term *all* into the statute, *see* 30 U.S.C. § 1264(f) (referring to participation "in the administrative proceedings as an objector").

Granted, the comments about the environmental assessment could support judicial review of the environmental assessment under the Administrative Procedure Act. *See Save Our Cumberland Mountains v. Kempthorne*, 453 F.3d 334, 339 (6th Cir. 2006) (recognizing the availability of judicial review under the Administrative Procedure Act for objections to an environmental assessment used to support the agency's

---

In a later reply brief supporting a letter of supplemental authorities, the advocacy groups argue for the first time that due process required the agency to provide actual notice of the revised permit to everyone who had "commented during the National Environmental Policy Act of 1969 process." Appellants' Reply to Their Notice of Requested Citations at 6 (citing 42 U.S.C. §§ 4321–47). This reply brief was unauthorized, too long, and too late for a new substantive claim. *See* Fed. R. App. P. 28(j) (authorizing a letter of supplemental authority and response, not a reply, and capping the letter and response at 350 words); *Feinberg v. Comm'r of Int. Rev.*, 916 F.3d 1330, 1337 n.2 (10th Cir. 2019) (stating that a party can't interject new arguments under Fed. R. App. P. 28(j), the appellate rule for letters of supplemental authority).

18

approval of a mining permit). But this appeal involves the reviewability of the approval of the revised permit under the Surface Mining Control and Reclamation Act (30 U.S.C. § 1261) rather than the Administrative Procedure Act.

Though the advocacy groups insist that they did object to the revised permit application by commenting on the environmental assessment, they also argue that they couldn't object to the permit application for two reasons:

1. "Section 1263(a) only allows participants to object based on the 'ownership, precise location, and boundaries of the land to be affected.'" Appellants' Reply Br. at 8.

2. The advocacy groups couldn't object given the statutory timeframe.

The advocacy groups argued in a reply brief that they couldn't squeeze their concerns into a cognizable objection to the permit. But the reply brief was too late for this argument. *See United States v. Salti*, 59 F.4th 1050, 1059 (10th Cir. 2023) (stating that an argument by the appellant was too late because it had not been raised in district court or in the opening appellate brief).

The argument is also mistaken. It is based on 30 U.S.C. § 1263(a), but this section governs applications rather than objections. Objections are governed by Section 1263(b), which does not limit the grounds to object.

Nor does Section 1263(b) create an unreasonable deadline for objections. GCC Energy filed the application in September 2019 and had to advertise the ownership, location, and boundaries of the land for four consecutive weeks. 30 U.S.C. § 1263(a). So the statute authorized the advocacy groups to object by November 2019. *See* 30 U.S.C. § 1263(b) (establishing a right to object "within thirty days after the last publication of the [Section 1263(a)] notice").[9] But the advocacy groups declined to comment on the application or object to it. Without commenting on or objecting to the application itself, the advocacy groups had no right to notice of the agency's decision. And without such notice, the advocacy groups couldn't pursue the remaining steps in the permit-review process, as required for judicial review under Section 1276. So this section doesn't authorize a judicial remedy for the advocacy groups.

5.    **Conclusion**

The advocacy groups have not complied with the statutory requirements for judicial relief or shown a violation of the agency's nondiscretionary duties. So we affirm the district court's denial of the petition for judicial review.

---

[9]    The advocacy groups incorrectly state that GCC Energy submitted the permit revision application in February 2018.

20